DECISION AND JUDGMENT
{¶ 1} This is an appeal from the Erie County Court of Common Pleas. Appellant, Shaunsay Gowdy, appeals his convictions on: (1) one count of complicity to commit felonious assault against a peace officer with a firearm specification, a violation of *Page 2 
R.C. 2903.11(A)(2) and (D) and 2923.03(A)(2), a felony of the first degree; (2) one count of complicity to commit felonious assault with a firearm specification, a violation of R.C. 2903.11(A)(2) and (D) and2923.03(A)(2), a felony of the second degree; (3) one count of complicity to intimidation, a violation of R.C. 2921.04(B) and2923.03(A)(2), a felony of the third degree; (4) complicity to tampering with evidence, a violation of R.C. 2903.12(A)(1) and (D) and2923.03(A)(2), a felony of the third degree; (5) one count of complicity to commit improperly firing a firearm into a habitation with a firearm specification in violation of R.C. 2923.161(A)(1)(c) and 2923.03(A)(2), a felony of the second degree; and (6) complicity to having a weapon while under disability with a firearm specification, a violation of R.C. 2923.13(A)(3) and (B) and 2923.03(A)(2), a felony of the second degree.
 {¶ 2} Appellant contends that the following errors occurred in the proceedings below:
 {¶ 3} "1. The evidence was insufficient to establish guilt beyond a reasonable doubt with respect to all of the complicity charges.
 {¶ 4} "2. The evidence was insufficient to establish guilt beyond a reasonable doubt with respect to all of the charges of felonious assault.
 {¶ 5} "3. The trial court erred in sentencing appellant separately as to the felonious assault charges for the reason that said offense were committed with a single animus. *Page 3 
 {¶ 6} "4. The trial court erred in sentencing the appellant separately as to the charges of felonious assault, intimidation of a witness, and improperly discharging a firearm at or into a habitation for the reason that said offenses were all committed with a single animus.
 {¶ 7} "5. The verdict of the trial court was against the manifest weight of the evidence."
 {¶ 8} The following pertinent evidence was adduced at the trial of appellant and his codefendant, Patrick Brown, who was also tried as a complicitor.
 {¶ 9} During the early morning hours of January 8, 2006, Detective Daniel Lewis of the Sandusky Police Department, who was currently assigned to the Erie County Drug Task Force, and his wife were asleep in the front bedroom of their residence. At approximately 6:20 a.m., Lewis and his wife were awakened by the sound of gunshots. Lewis initially believed that someone was throwing rocks at the house, but his wife informed him of the fact that it was gunshots. A bullet came through the front window of the Lewis bedroom, passed through the bedroom door, struck the bedroom wall, and ended up on the closet floor in an adjoining bedroom.
 {¶ 10} Detective Lewis immediately contacted the Sandusky Police Department. Officer James Desalle was the first to arrive at the scene. After speaking with Lewis and his wife and finding the bullet that came through the bedroom window, Desalle went outside to look for additional evidence. From the angle that the bullet came through the *Page 4 
window and entered the door, Desalle determined that it came from a gun held by an individual standing on either a nearby alley or the "apron" of an entrance to an apartment complex across the street from the Lewis residence. When he crossed the street and stood on the apron, Desalle noticed a "skip mark" on the hood of the white vehicle that was used by Detective Lewis in performing his job as a member of the Erie County Drug Task Force.
 {¶ 11} Because a witness told the police that she heard a gunshot and then "some individuals" running through the area of the apartment complex, law enforcement officers did a "sweep" of the parking lot and grounds, starting at that portion closest to the Lewis residence and heading toward Clinton Street, which is located on the other side of the complex. According to Captain Charles Samms, there was a lot of frost in the area, especially on any objects that were on the ground or parking lot. However, as he walked between two of the apartment buildings, Captain Samms observed a cell phone on the ground that was not frost covered. The police took a photograph of the phone. It was then secured as evidence and delivered to the Ohio Bureau of Criminal Investigations ("BCI"), where it was determined that Patrick Brown's DNA was on this particular cell phone.
 {¶ 12} Investigators also discovered that the phone belonged to Patrick's brother, Cedric Brown, but Cedric claimed that he left the phone in Patrick's car. Four or five calls were made between 6:12 a.m. and 6:15 a.m. on January 8, 2006, from a second cell *Page 5 
phone found in the possession of Patrick Brown to the cell phone found on apartment complex grounds. One call was made from the cell phone in the possession of Patrick Brown to appellant's cell phone during that same time frame. After 6:20 a.m., several calls were made from appellant's cell phone to the cell phone found on the apartment complex grounds.
 {¶ 13} Officer Eric Mohr was assigned to work the perimeter of the crime scene and was stationed at the intersection of Clinton and Taylor Streets. Mohr saw a green van coming from the north and heading south on Clinton. Approximately halfway down the block, the driver turned off his headlights, continued driving past "three or four houses," and stopped. Approximately one minute later, someone exited from the driver's side. Mohr walked over to the van and asked that individual for some identification. The man gave the officer a state I.D. card identifying him as Patrick Brown. Brown kept putting his hands into his pockets and getting loud. Because he refused to "quiet down," Officer Mohr arrested him for disorderly conduct. He subsequently arrested appellant, who was the passenger in the van, after Detective Max Jarrett, a lieutenant in the Sandusky Police Department, told Mohr that appellant was under house arrest. Several drug charges and a weapons charge were pending against Gowdy at that time. Both Jarrett and Detective Lewis were involved in the investigations leading to those charges.
 {¶ 14} When Detective Jarrett arrived at the Lewis residence, Officer Mohr, appellant, Patrick Brown, and the green van were at the scene. Officer Mohr told Jarrett *Page 6 
that there was a gun holster in the van behind the driver's seat. At trial, Jarrett opined that such a holster could hold a .380 semiautomatic handgun. The detective took gunshot residue samples from both appellant's and Brown's hands. These samples were taken to the BCI where testing established that appellant had gunshot residue on his hands, but that Patrick Brown did not have gunshot residue on his hands. Appellant claimed, nonetheless, that he did not fire a gun on the morning of January 8, 2006.
 {¶ 15} The van was towed to the police department and processed by Special Agent Dan Winterich, who is employed by the BCI. Winterich took samples from the inside of the van's windows and door frames, obtained samples for DNA testing from the holster, collected Patrick Brown's black sweatshirt/jacket, and took the cell phone found in the van for analysis at the BCI. Testing showed that there was gunshot residue on the van's windows and door frames and on the jacket. The bullet recovered in the Lewis residence was also transported to the BCI. The shell casing of that bullet was not found.
 {¶ 16} Two days later, Jarrett learned that the recovered bullet was fired from a .380 semiautomatic or automatic pistol. Based upon this information, Jarrett believed that there was a good chance of finding the casing of the bullet in the area of the shooting. Therefore, he, Detective Helen Prosowski, Detective John Orzech, and Officer Kenneth Piotrowski, returned to the scene of the shooting. Detective Prosowski found a fired bullet in an area across the street from the Lewis residence. She also found a shell casing near a boat parked on that side of the street. The BCI determined that the bullet *Page 7 
Prosowski found came from the same .380 semiautomatic or automatic pistol as the bullet fired into the Lewis residence. The shell casing did not match that weapon.
 {¶ 17} In addition to the foregoing evidence, the parties stipulated to the following facts:
 {¶ 18} "1.) Shaunsay Gowdy was convicted in 2000 of an offense that would place him under disability from handling a weapon and he was not relieved from that disability on January 8, 2006."
 {¶ 19} "2.) On January 8, 2006, Shaunsay Gowdy was under house arrest."
 {¶ 20} As set forth above, the jury found appellant guilty of the charged offenses; nonetheless, Brown was found not guilty of all of those same charged offenses. In sentencing appellant, the trial court merged all of the firearm specifications and ordered appellant to serve an actual seven years in prison consecutive to any other sentences imposed by the court. The judge further imposed (1) a definite sentence of ten years in prison for the violation of R.C. 2903.11(A)(2) and (D) and 2923.03(A)(2); (2) a definite sentence of eight years for the violation of R.C. 2903.11(A)(2) and (D) and 2923.03(A)(2); (3) a definite sentence of five years for the violation of R.C. 2921.04(B) and2923.03(A)(2); (4) a definite sentence of five years for the violation of R.C. 2903.12(A)(1) and 2923.03(A)(2); a definite sentence of eight years in prison for the violation of R.C. 2923.161(A)(1)(c); and (5) a definite sentence of five years in prison for the violation of R.C. 2923.13(A)(3) and (B) and 2923.03(A)(2). Some of these later *Page 8 
sentences are to be served concurrently and others, consecutively, for a total of 40 years in prison to be served consecutive to sentences imposed in two other criminal cases.
 {¶ 21} In his first assignment of error, appellant urges that insufficient evidence was offered at trial to establish the element of complicity as to each of the charged offenses. Appellant's argument on this issue, however, involves only the fact that no one was prosecuted as the principal offender. Based upon this fact and the fact that the jury found that Patrick Brown was not guilty, appellant contends that he was impermissibly convicted as the principal offender; or that he was convicted of being a complicitor to himself. We disagree. Specifically, R.C. 2923.03(B) states: "It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender." See, also, State v. Graven (1977),52 Ohio St.2d 112, 115-116; State v. Beehive Ltd. Partnership (1993), 89 Ohio App.3d 718, 723. In other words, the state was not required to either identify or charge an individual as the principal offender in order to obtain the conviction of appellant as a complicitor. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 22} In his second assignment of error, Gowdy argues that the prosecution produced insufficient evidence to establish, beyond a reasonable doubt, the two charges of felonious assault. In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in the record in order to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), *Page 9 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Wilson, 12th Dist. No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. The material inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Jenks, supra, at 274. Finally, in considering the sufficiency of the evidence, a reviewing court must not substitute its evaluation of the witnesses' credibility for that of the jury. State v. Benge,75 Ohio St.3d 136, 143, 1996-Ohio-227.
 {¶ 23} Under R.C. 2903.11(A)(2), felonious assault occurs when a person knowingly causes or attempts to cause physical harm to another "by means of a deadly weapon or dangerous ordnance." In the present case, appellant claims that because no evidence was offered to establish that he or the shooter knew that someone was in the Lewis residence at the time the shooter fired an .380 automatic pistol into that residence, he could not be found guilty (as an accomplice) of knowingly attempting to physically harm another. Appellant relies upon State v. Mills (1992),62 Ohio St.3d 357, to support this proposition.
 {¶ 24} In Mills, the defendant, during the process of robbing a bank, fired a shot that struck the counter in front of two tellers, named, respectively, Johnson and Laster. Id. He then jumped over the counter and hit Johnson in the head with a hard object. Grabbing Laster, he "held a gun to her head, and commanded her to open a nearby safe." Id. A third teller, Katherine Kamphaus, who was standing in the desk area, heard the shot *Page 10 
and hid under a desk. Id. Appellant was charged with the felonious assault of all three tellers and was found guilty on all three charges. Id. at 360.
 {¶ 25} On appeal to the Ohio Supreme Court, Mills asserted, inter alia, that there was insufficient evidence to sustain the convictions for the felonious assault as to all three tellers. Id. 369. Ohio's high court disagreed, finding that there was sufficient evidence offered at trial to support the felonious assault convictions with regard to Johnson and Laster. Id. Nonetheless, the court reversed the conviction for the alleged felonious assault of Kamphaus, holding:
 {¶ 26} "When the initial shot was fired, she [Kamphaus] was standing near a desk area located behind the counter and off to one side. She was not in the line of fire when the gunmen entered and hid under her desk during the remainder of the robbery. The evidence is insufficient to support the finding that Mills knowingly attempted to physically harm Kamphaus. R.C. 2903.11. Accordingly, we reverse this conviction." Id.
 {¶ 27} We do not find the holding in Mills to have any effect on the outcome of this cause. In particular, the shots fired at the Lewis residence can be likened to the gunshots fire by Mills at the tellers' counter in the bank, thereby placing any persons therein in the line of fire. Moreover, and of greater importance, is the fact that the Ohio Supreme Court declined to accept an appeal of a case that is on point with the cause before us. See State v. Elko, 8th Dist. No. 83541,2004-Ohio-5209, appeal not allowed, 105 Ohio St.3d 1441. *Page 11 
 {¶ 28} In State v. Elko, the defendant fired shots into the victims' basement glass block window. Id. at ¶ 3. The intended victim had his bedroom in that basement directly behind that window. Id at ¶ 4. None of the victims was in the basement at the time and none were injured. Id. at ¶ 47. As a result of this incident, Elko was found guilty of felonious assault and improperly discharging a firearm into a habitation. Id. at ¶ 1. On appeal, Elko argued that he could not be convicted of felonious assault because he did not cause any physical harm to any of the victims. Id. at ¶ 47. The court rejected this argument stating that the evidence demonstrated that the defendant fired a pistol, a deadly weapon, into a glass block window without knowing who could be inside at the time of the shooting, Id. at ¶ 53. TheElko court held: "The fact that none of the victims were physically hurt and that none of the bullets penetrated through the glass block window are irrelevant. Firing a pistol into a window, without knowing who could be behind it, satisfies a knowing attempt to cause physical harm. * * * The evidence presented at trial was sufficient to convict the appellant of felonious assault." Id. at ¶ 54.
 {¶ 29} As in Elko, shots were fired at the Lewis residence by someone who may have had no knowledge of who might be inside at the time of the shooting. One bullet went through the window immediately above the bed in which Daniel Lewis and his spouse were sleeping and ended up in their daughter's closet. Consequently, sufficient evidence was offered to satisfy R.C. 2903.11(A)(2), and appellant's second assignment of error is found not well-taken. *Page 12 
 {¶ 30} In his third assignment of error, appellant maintains that the trial court erred in sentencing him on both convictions for felonious assault and ordering him to serve those sentences consecutively because there "was only one shot fired" into the Lewis residence; thus, there could be only a finding of a single animus in this case. Therefore, he argues that the trial court violated R.C. 2941.25, the statute employed when determining whether two or more crimes are allied offenses of a similar import, by imposing a sentence for each felonious assault conviction.
 {¶ 31} R.C. 2941.25 reads:
 {¶ 32} "(A) Where the same conduct by the defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 33} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all them."
 {¶ 34} In a relatively recent case, this court addressed the question raised by appellant. See State v. Gibson, 6th Dist. No. S-02-016, 2003-Ohio-1996. In that case, the defendant deliberately hit three people walking in an alley with his brother's motor vehicle. Id. at ¶ 2 and ¶ 6. As a result of his actions, appellant was convicted of three *Page 13 
counts of felonious assault. Id. at ¶ 18. On appeal, Gibson argued that because the automobile hit all three victims at the same time, R.C. 2941.25 precluded convictions for all three felonious assault charges. Id. This court held:
 {¶ 35} "[R.C. 2941.25] has been referred to when the issue has been multiple victims, felonious assault convictions, or both. When there is a situation where the defendant's conduct puts more than one person at risk, the crimes are of dissimilar import. State v. Franklin,97 Ohio St.3d 1, 2002-Ohio-5304, at ¶ 48; State v. Jones (1985),18 Ohio St.3d 116, 117-118, 480 N.E.2d 408. Here, Gibson put three separate people at serious risk by driving down the alley. Therefore, he is subject to three separate convictions and sentences under R.C. 2941.25." Id. at ¶ 19.
 {¶ 36} As applied to the present case, two persons were put at risk when the shooter fired his or her pistol at the Lewis residence. Therefore, the two charges of felonious assault are of a dissimilar import, and the trial court could impose separate sentences for the convictions on these charges. Consequently, appellant's third assignment of error is found not well-taken.
 {¶ 37} Similarly, Gowdy contends, in his fourth assignment of error, that the trial court erred in sentencing him separately for his convictions on the charges of felonious assault, intimidation of a witness, and discharging a firearm at or into a habitation because there was only a single animus in the commission of these crimes. We find that *Page 14 
while these offenses may have been committed with a single animus, they are offenses of a dissimilar import.
 {¶ 38} In State v. Rance (1999), 85 Ohio St.3d 632, the Supreme Court of Ohio held, pursuant to R.C. 2941.25(A), that if a defendant's actions can be construed to constitute two or more allied offenses of similar import he may be convicted of and sentenced for only one. The court further found, however, that if a defendant commits offenses of a dissimilar import separately or with a separate animus, he may be punished for both, pursuant to R.C. 2941.25(B). Id. at 636. TheRance court further determined that criminal offenses are allied offenses of similar import if, after being examined in the abstract, they correspond to such a degree that the commission of one crime will result in the commission of the other. Id., at paragraph one of the syllabus. If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends there. Id. at 636.
 {¶ 39} With regard to appellant's convictions on the charges of felonious assault and discharging a firearm into a habitation, a felonious assault occurs when a person knowingly causes or attempts to cause physical harm to another by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). R.C. 2923.161 reads: "(A) No person, without privilege to do so, shall knowingly do any of the following: "(1) Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual." An "occupied structure" is defined, in relevant part, as any *Page 15 
house that is, at the time of the offense, occupied as the permanent or temporary habitation of any person whether or not that person is present." R.C. 2909.01(C)(4).
 {¶ 40} In State v. Gray, 10th Dist. No. 04-AP-938, 2005-Ohio-4563, the Tenth Appellate District, using the foregoing definitions, discussed the question of whether or not felonious assault and knowingly discharging a weapon into an occupied habitation were allied offense of a similar import. The Gray court answered this question in the negative, holding that in order to find a defendant guilty of felonious assault, he must have attempted to cause or actually caused harm to another person by means of a deadly weapon or dangerous ordinance. Id. at ¶ 21. On the other hand, the Tenth Appellate District found that a defendant could be found guilty of discharging a firearm into an occupied habitation even when this conduct did not pose a risk of harm to another person. Id. Therefore, the court concluded that the two offenses were of a dissimilar import and that their inquiry was at an end. Id. at ¶ 24. We agree with Gray and, hereby, find that appellant could be punished for both the conviction on the charge of felonious assault and the charge of knowingly discharging a firearm into an occupied structure.
 {¶ 41} R.C. 2921.04(B) provides that "[n]o person, knowingly and by force or by unlawful threat of any harm to person or property, shall attempt to influence, intimidate, or hinder * * * [a] witness involved in a criminal action * * * in the discharge of the *Page 16 
duties of the * * * witness[1] ." As can be readily discerned by comparing the elements of R.C. 2921.04(B) and R.C. 2903.11(A)(2), the felonious assault statute, in the abstract, the offenses set forth therein are offenses of a dissimilar import. Specifically, in order to commit a violation of R.C. 2903.11(A)(2), the offender is required to use a deadly weapon or dangerous ordnance. No such requirement is made in R.C. 2921.04(B). Therefore, the trial court could sentence appellant for both of these convictions, and appellant's fourth assignment of error is found not well-taken.
 {¶ 42} In his fifth and final assignment of error, appellant contends that the trial court's judgment is against the manifest weight of the evidence. In reviewing a claim that a trial court's judgment is against the manifest weight of the evidence, an appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. Reversals occur "only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 43} Based upon a careful and thorough review of the facts of this cause as set forth above, we cannot find that the jury lost its way and created such a manifest miscarriage of justice that its judgments on each of the charges brought against appellant *Page 17 
must be reversed. Accordingly, appellant's fifth assignment of error is found not well-taken.
 {¶ 44} The judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
 JUDGMENT AFFIRMED. *Page 18 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., William J. Skow, P.J., Thomas J. Osowik, J., Concur.
[1] The witness in this cause is Detective Lewis, who, as noted above, was involved in the criminal investigation and prosecution of appellant for trafficking in drugs and for weapons charges. *Page 1