[Cite as *State v. Smith*, 2023-Ohio-866.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No.  L-22-1141

    Appellee                                            Trial Court No.  CR0202002229

v.

Robert Witcher Smith                                **DECISION AND JUDGMENT**

    Appellant                                        Decided:  March 17, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Robert Witcher Smith, appeals the May 18, 2022 judgment of the Lucas County Court of Common Pleas, convicting him of gross sexual imposition and abduction, and sentencing him to consecutive prison terms of 18 months and 36 months, respectively.  For the following reasons, we affirm the trial court judgment.

# I. Background

{¶ 2} On October 7, 2020, Robert Witcher Smith was indicted on one count of rape, a violation of R.C. 2907.02(A)(2) and (B), and kidnapping, a violation of R.C. 2905.01(A)(4) and (C)—both first degree felonies. On April 4, 2022, Witcher Smith entered a plea of guilty to the lesser-included offenses of gross sexual imposition, a violation of R.C. 2907.05(A)(1), a fourth-degree felony; and abduction, a violation of R.C. 2905.02(A)(1), a third-degree felony. The trial court sentenced him to a prison term of 18 months on the gross sexual imposition charge and 36 months on the abduction charge, to be served consecutively. His conviction and judgment are memorialized in a judgment entered on May 18, 2022.

{¶ 3} At the sentencing hearing, the trial court recited the facts of this case as articulated in a police report. As summarized by the court, Witcher Smith lured a 14-year-old into his vehicle; the report suggests that he may have even grabbed her by the sleeve and pulled her into the vehicle. He drove her "some distance," and "[p]ulled into an alley." "[O]ne or more sex acts occurred between the Defendant and the victim," then Witcher Smith phoned a second man and told him where he was. The second man arrived and entered the vehicle, and Witcher Smith left the vehicle for a short time, during which time the second man also sexually assaulted the victim. After the second assault was completed, Witcher Smith returned to the vehicle and got back in. The two men then drove the victim to a store "some distance away" and released her.

2.

{¶ 4} Before sentencing, Witcher Smith filed a sentencing memorandum, urging the trial court to find that his convictions should merge for purposes of sentencing— importantly, this memorandum did not contain a synopsis of the facts supporting merger, other than to tersely state that the abduction was sexually motivated and the abduction and sexual assault occurred "in relatively quick succession." He raised this argument at sentencing as well, again, offering no specific facts. The state did not respond in writing or contest Witcher Smith's contention that the convictions must merge, however, the trial court had conducted its own research and determined that under certain circumstances, gross sexual imposition and abduction are not subject to merger. It concluded that merger was not appropriate in this case.

{¶ 5} Witcher Smith appealed. He assigns the following error for our review:

THE TRIAL COURT ERRED TO THE PREJUDICE OF

APPELLANT IN FINDING THAT GROSS SEXUAL IMPOSITION AND

ABDUCTION ARE NOT ALLIED OFENSES FOR PURPOSES OF

SENTENCING[.]

## II.    Law and Analysis

{¶ 6} In his sole assignment of error, Witcher Smith argues that the trial court erred when it refused to merge his convictions for gross sexual imposition and abduction. He claims that these offenses are allied offenses that must merge for purposes of sentencing because his conduct constituted a single course of conduct, the acts involved a

3.

single victim and a single animus, and the acts did not cause separate harms. Witcher Smith contends that the abduction of the victim was "merely incidental to" the commission of the sexual offense.

{¶ 7} The state responds that the harms experienced by the victim were separate and identifiable. It emphasizes that the victim was abducted, driven to an alley, sexually assaulted by Witcher Smith, sexually assaulted by a second individual, driven to another location, and finally released.S The state insists that there were actually two abductions, and the victim suffered physical and emotional harm from both the sexual assaults and the abductions.

{¶ 8} The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, applicable to the state through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10. The Double Jeopardy Clause protects against a number of abuses. *Id.* Pertinent to this case is the protection against multiple punishments for the same offense. *Id.* To that end, the General Assembly enacted R.C. 2941.25, which directs when multiple punishments may be imposed. *Id.* It prohibits multiple convictions for allied offenses of similar import arising out of the same conduct:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or

4.

information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 9} In *Ruff*, the Ohio Supreme Court examined in detail the analysis that must be performed in determining whether offenses are allied offenses of similar import under R.C. 2941.25. It identified three questions that must be asked: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *Id.* at ¶ 31. If the answer to any of these questions is "yes," the defendant may be convicted and sentenced for multiple offenses. *Id.* at ¶ 25, 30. The court explained that offenses are of *dissimilar* import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. It emphasized that the analysis must focus on the defendant's conduct, rather than simply compare the elements of two offenses. *Id.* at ¶ 30.

{¶ 10} The defendant bears the burden of establishing that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999

5.

N.E.2d 661, ¶ 18, citing *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987). An appellate court reviews de novo whether offenses should be merged as allied offenses under R.C. 2941.25. *State v. Bailey,* Slip Opinion No. 2022-Ohio-4407, ¶ 5, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1. "Although determining whether R.C. 2941.25 has been properly applied is a legal question, it necessarily turns on an analysis of the facts * * *." *Id.* at ¶ 11. This "can lead to exceedingly fine distinctions." *Id.* As such, an allied offenses analysis "may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases." *Ruff* at ¶ 32. Different results are permissible because "the statute instructs courts to examine a defendant's conduct—an inherently subjective determination." *Id.,* quoting State v. *Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52 (plurality opinion per Brown, C.J.).

**{¶ 11}** Initially, we observe that while Witcher Smith filed a sentencing memorandum and argued at sentencing that the convictions should merge for purposes of sentencing, he failed to present the facts of the case—either at the plea hearing, in his memorandum, or at the sentencing hearing—other than to briefly state that the abduction was sexually motivated and that the abduction and sexual assault occurred "in relatively quick succession." *See Ruff* at ¶ 26 ("The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import."). Instead, the trial court summarized the facts from the police report and gave Witcher Smith's attorney an

6.

opportunity to challenge any inaccuracies.  For the most part, defense counsel agreed with the court's recitation, other than to suggest that there may have been some unspecified inconsistencies between the police report and the victim's statement to the investigating detective.  Given the fact-intensive nature of a merger analysis, it was incumbent on Witcher Smith to offer specific facts supporting merger.  He failed to do this.

{¶ 12} The trial court, on the other hand, fully articulated its rationale for not merging the convictions.  *See Washington,* 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, at ¶ 24 ("[W]hen deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus.").  It explained:

> I'd indicate that this Court's view is that the Abduction occurred both before the sexual assault, during the sexual assault, and most importantly, after the sexual assault because after Mr. Witcher Smith does sexually assault the victim, he leaves the vehicle, goes into either a house or a store for "X" period of time.  Thereafter, returns with the victim still in the vehicle with her second assailant where they relocate her yet again, some distance away before they let her loose.

7.

{¶ 13} In finding that the offenses here were not allied offenses subject to merger, the trial court relied on *State v. DeGarmo*, 5th Dist. Muskingum No. CT2018-0061, 2019-Ohio-4050, ¶ 38. In *DeGarmo*, the defendant entered pleas to gross sexual imposition and abduction. The Fifth District concluded that the trial court did not commit plain error in failing to merge the offenses at sentencing because the victim suffered dissimilar emotional and physical harm when (1) the offender forcefully pulled her into the garage and prevented her from leaving, and (2) the offender touched her vagina with his penis.

{¶ 14} Witcher Smith relies on *State v. Merz,* 1st Dist. Hamilton No. C-200152, 2021-Ohio-2093, in support of his claim that the offenses should have merged for purposes of sentencing. In *Merz,* Merz told his 15-year-old stepdaughter that he was taking her to a special place to look for arrowheads, but instead drove her to a secluded, wooded area along the Ohio River. After they exited his van, he began kissing his stepdaughter's neck. She told him to stop, but he pushed her onto the front passenger seat, forced himself on top of her, and began to grope her. Merz struck the victim several times as she resisted him, but she was ultimately able to fight him off, push him out of the van, and lock herself in the vehicle.

{¶ 15} Like Witcher Smith (and DeGarmo), Merz entered a plea of guilty to gross sexual imposition and abduction. The trial court refused to merge the offenses, and Merz appealed.

8.

{¶ 16} The First District Court of Appeals reversed. On appeal, the state conceded that the abduction that occurred concurrent with the sexual assault should merge with the gross sexual imposition, but it maintained that an additional abduction occurred when Merz took his stepdaughter to the secluded area under the pretense of looking for arrowheads, providing an independent offense. But the appellate court noted that Merz entered a plea to abduction—not kidnapping—and unlike kidnapping, abduction cannot be committed by deceiving the victim into accompanying the offender, as happened in that situation; abduction requires threat or force. The court concluded that Merz did not have a separate animus for abduction because his immediate motive in restraining his stepdaughter was to sexually assault her. It also observed that there was only one victim, there was no indicia of separate harm that could be traced to one offense over the other, the offenses transpired simultaneously in the same location, and "[t]he restraint occurred only during—and as part of—the sexual assault * * *." *Id.* at ¶ 16.

{¶ 17} The facts of the present case are different than *Merz.* Here, Witcher Smith, by force or threat, removed the victim from the place she was found (i.e., abducted her), and took her to a location where she was subjected to two assaults—one by Witcher Smith, and a second by an acquaintance that Witcher Smith invited to the scene. Witcher Smith did not simply let the victim go after he assaulted her. He prolonged her restraint and facilitated a second sexual assault. Moreover, he did not release her immediately

9.

after the second assault.  He took the victim to yet another location before allowing her out of the vehicle.

{¶ 18} In *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), involving convictions for rape and kidnapping, the Ohio Supreme Court examined the factors to be considered in determining whether a separate animus existed for both offenses, such that the defendant could be sentenced for both offenses.  It explained that "[w]here the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions."  *Id.* at syllabus. Additionally, "[w]ere the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."  *Id.*

{¶ 19} In *Logan,* the court concluded that "the restraint and movement of the victim had no significance apart from facilitating the rape" because "[t]he detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape."  *Id.* at 135.  *See State v. Kuntz,* 4th Dist. Ross No. 20CA3731,

10.

2022-Ohio-3376, ¶ 27 (explaining that *Logan* test is still applied even though it predates *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892).

{¶ 20} Here, after transporting the victim to the alley, Witcher Smith prolonged her restraint to facilitate a second sexual assault of the victim by a second perpetrator; the asportation of the victim allowed for this second assault and caused an increase in harm separate and apart from the underlying gross sexual imposition committed by Witcher Smith; and the victim was not immediately released—she was transported by both of her attackers to another location. Under these circumstances, we agree with the trial court that the offenses were not allied and were not subject to merger. *See also State v. Crider,* 8th Dist. Cuyahoga No. 99396, 2013-Ohio-4594, ¶ 13-14 (finding that abduction and attempted gross sexual imposition did not merge where defendant grabbed victim by the arm and removed her from the public road to a hidden area behind bushes).

{¶ 21} We find Witcher Smith's sole assignment of error not well-taken.

### III.     Conclusion

{¶ 22} At sentencing and in his sentencing memorandum, Witcher Smith failed to assert facts in support of his claim that his convictions should have merged. Nevertheless, the facts, as summarized by the trial court, demonstrate that Witcher Smith's convictions of gross sexual imposition and abduction were not subject to merger because the restraint was prolonged in order to allow for a second sexual assault of the victim by a second perpetrator; the asportation of the victim allowed for this second

11.

assault and caused an increase in harm separate and apart from the underlying gross sexual imposition committed by Witcher Smith; and the victim was not immediately released, but was instead transported by both of her attackers to another location. We find Witcher Smith's assignment of error not well-taken.

{¶ 23} We affirm the May 18, 2022 judgment of the Lucas County Court of Common Pleas. Witcher Smith is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.             _____
                                                   JUDGE
Gene A. Zmuda, J.            

                                           _____
Charles E. Sulek, J.                                    JUDGE
CONCUR.

                                           _____
                                                 JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.