[Cite as *State v. Fisher*, 2023-Ohio-2088.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


State of Ohio                                       Court of Appeals No.  L-22-1150

    Appellee                                    Trial Court No.  CR0202103061

v.

Malcolm D. Fisher                          **DECISION AND JUDGMENT**

    Appellant                                   Decided:  June 23, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**ZMUDA, J.**

### I.      Introduction

{¶ 1} Appellant, Malcolm Fisher, appeals the judgment of the Lucas County Court

of Common Pleas, sentencing him to an aggregate prison term of 55 years to life after

appellant pled guilty under *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27

L.Ed.2d 162 (1970) to aggravated murder, felonious assault, aggravated burglary, having weapons while under disability, and several attendant firearms specifications.

## A. Facts and Procedural Background

{¶ 2} On December 22, 2021, appellant was indicted on one count of aggravated murder in violation of R.C. 2903.01(A) and (G), an unclassified felony ("Count 1"), one count of aggravated murder in violation of R.C. 2903.01(B) and (G), an unclassified felony ("Count 2"), one count of murder in violation of R.C. 2903.02(B) and 2929.02, an unclassified felony ("Count 3"), one count of felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree ("Count 4"), one count of aggravated burglary in violation of R.C. 2911.11(A)(1) and (B), a felony of the first degree ("Count 5"), one count of kidnapping in violation of R.C. 2905.01(A)(2) and (C), a felony of the first degree ("Count 6"), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree ("Count 7"). Firearms specifications under R.C. 2941.145 were attached to all counts except Count 7.

{¶ 3} On January 12, 2022, appellant appeared before the trial court for arraignment, at which time he entered a plea of not guilty to the aforementioned charges. The following day, appellant's trial counsel filed a written plea of not guilty by reason of insanity and moved the trial court for a competency examination.

2.

{¶ 4} On March 1, 2022, the trial court issued an entry referring the matter to the Court Diagnostics & Treatment Center for an evaluation of appellant's competency to stand trial. A competency hearing was ultimately held before the trial court on May 3, 2022. Following the hearing, the trial court found appellant competent to stand trial.

{¶ 5} Thereafter, the matter proceeded through plea negotiations. Following successful plea negotiations, appellant appeared before the trial court for a change of plea hearing on May 24, 2022. At the outset of the hearing, the state articulated a plea agreement it reached with appellant, under which appellant agreed to withdraw his prior plea of not guilty and enter a plea of guilty pursuant to *Alford*, *supra*, to Counts 1, 4, 5, and 7, with firearms specifications attached to Counts 1, 4, and 5. In exchange, the state agreed to dismiss the remaining counts and firearms specifications contained in the indictment, and the parties agreed that appellant would not be sentenced to life without the possibility of parole. The state informed the trial court that it "makes no argument as to merger at this point; however, [the state] does not believe as an operation of law that these charges are subjected to merger."

{¶ 6} Prior to accepting appellant's *Alford* plea, the trial court engaged appellant in a thorough Crim.R. 11 colloquy. During the colloquy, the trial court informed appellant that "some of these sentences may merge. I don't know that at this point. The State argues that they don't."

3.

**{¶ 7}** At the conclusion of the colloquy, the trial court asked the state to provide a factual basis for appellant's plea. The state responded:

The State would have shown the following had this case proceeded to trial: The State would have shown that this defendant went to 3165 Hazleton, Oregon, Ohio, 43616, for the purpose of murdering the victim in this case, Johanna Crawford, and kidnapping his biological daughter, [A.F.], who was nine years old at the time.

The State would have shown that on December 16th of 2021, this defendant told at least three people that he was going to that house to murder both Johanna Crawford, as well as her husband, Knute. Knute was not home at the time. He went to the house with a 12-gauge shotgun, shot the lock off the front door, entered the premises without permission, located Johanna, and shot her in the head with a shotgun, killing her immediately.

* * * He went there with that sole purpose and he did it. Thankfully Knute was not home. His daughter, who he did not have custody of at the time, he had custody with Johanna and Knute, who are her grandparents, was upstairs sleeping at the time.

Defendant, after breaking in, shooting his way into the house really, and cornering and executing Johanna Crawford, went upstairs, took his daughter, again, who he did not have custody of, and fled the scene. He did

4.

so – it was about almost 11:00 at night.  He woke her up from sleep, took her out of the house, drove her to Toledo to a friend's house.  That friend then informed the police this defendant was there, and thankfully the police showed up, placed the defendant in custody without further incident.

{¶ 8} After the state finished its recitation of the predicate facts, the trial court accepted appellant's plea, found him guilty of all offenses and firearms specifications to which he pled, and referred the matter to the probation department for preparation of a presentence investigation report.

{¶ 9} On June 8, 2022, appellant's sentencing hearing was held.  At the sentencing hearing, the trial court asked the parties to address the issue of merger of appellant's offenses.  The state asserted that the offenses of aggravated murder, felonious assault, aggravated burglary, and having weapons while under disability were not allied offenses of similar import and argued that only the firearms specifications should merge.  Thereafter, appellant's trial counsel argued that

> both the felonious assault and the aggravated burglary should merge in this case as is laid out, I think, on Page 4 of the presentence investigation report.  My client's conduct in this matter was singular in its animus of what he was intending to do.  He had actually called several people before this – the events of that day took place.  * * * [M]y client clearly left with a singular intent when he went into the house.  It was not to steal anything or to

commit any other felony other than the aggravated murder, which he did. We feel that the only one that should (sic) merge is the having weapons while under disability, and we would ask that the Court so merge those counts.

{¶ 10} In response, the state argued that the offenses were committed separately. Specifically, the state asserted that the aggravated burglary was committed when appellant "grabbed [A.F.'s] arm and pulled her out of bed and into his car." Further, the state provided that the felonious assault charge was based upon "multiple defects in the house" and "a circumstantial finding that the victim in the house was shot at and moved to the location where she was finally deceased."

{¶ 11} Upon consideration of the parties' arguments, the trial court summarily decided that only the firearms specifications were subject to merger in this case. Thereafter, the trial court heard a statement in mitigation from appellant's trial counsel[1] as well as a letter from Knute. Ultimately, the court ordered appellant to serve prison terms of 30 years to life as to Count 1, 8 to 12 years as to Count 4, 11 to 16 1/2 years as to Count 5, and 36 months as to Count 7. The trial court then merged all of the firearm specifications and imposed a mandatory and consecutive three-year prison term as to the firearm specification pursuant to R.C. 2929.14(B)(1)(a)(ii) and (C)(1)(a).

---

[1] Appellant chose not to make a statement in mitigation.

6.

{¶ 12} The trial court found, both at the sentencing hearing and in its sentencing entry, that consecutive sentences under R.C. 2929.14(C)(4) were necessary to protect the public from future crime or to punish appellant and were not disproportionate to the seriousness of appellant's conduct and to the danger he poses to the public. Additionally, the court found that appellant was on community control at the time of the offenses, that the harm appellant caused was so great or unusual that no single prison term would be adequate, and that appellant's criminal history demonstrates that consecutive sentences are necessary to protect the public. Consequently, the trial court ordered all of appellant's sentences to be served consecutively to one another and, pursuant to R.C. 2929.14(C)(1)(a), consecutively to the firearms specification, for an aggregate prison term of 55 years to life.

{¶ 13} While not addressing the matter at the sentencing hearing, the trial court, in its sentencing entry, also found that appellant had the ability to pay for the costs of confinement, supervision, and prosecution. Consequently, the trial court imposed such costs upon appellant in its entry.

{¶ 14} Following the sentencing hearing, on June 28, 2022, appellant filed his timely notice of appeal.

### B. Assignments of Error

{¶ 15} On appeal, appellant assigns the following errors for our review:

7.

I.  The trial court committed plain error by failing to merge Fisher's sentences on the basis of allied offenses of similar import.

II.  The court improperly assigned costs of confinement and supervision in the judgment entry of sentencing, but not at the sentencing hearing, and without regard to appellant's ability to pay.

## II.    Analysis

### A.    Allied Offenses of Similar Import

{¶ 16} In his first assignment of error, appellant argues that the offenses of aggravated murder, felonious assault, and aggravated burglary were allied offenses of similar import and thus the trial court erred in failing to merge them at sentencing.

{¶ 17} Appellant's argument implicates the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, made applicable to the state through the Fourteenth Amendment.  It provides several protections, including the protection against multiple punishments for the same offense.  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10.  The Ohio General Assembly has codified this protection by enacting R.C. 2941.25, which "directs when multiple punishments may be imposed," and "prohibits multiple convictions for allied offenses of similar import arising out of the same conduct." *State v. Smith*, 2023-Ohio-866, --- N.E.3d ----, ¶ 8 (6th Dist.), citing *Ruff* at ¶ 10. Specifically, R.C. 2941.25, provides:

8.

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 18} In *Ruff*, the Ohio Supreme Court set forth the following three-part test to determine whether a defendant can be convicted of multiple offenses:

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶ 31. The court explained that offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. The allied offenses analysis focuses on the conduct of the defendant, not merely the elements of the offenses at issue. *Id.* at ¶ 30.

{¶ 19} "The defendant bears the burden of establishing that R.C. 2941.25 prohibits multiple punishments." *Smith* at ¶ 10, citing *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18. Whether offenses are allied offenses of similar import subject to merger under R.C. 2941.25 is a question of law that this court reviews de novo.[2] *State v. Bailey*, --- Ohio St.3d ----, 2022-Ohio-4407, --- N.E.3d ----, ¶ 6, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1. "Although determining whether R.C. 2941.25 has been properly applied is a legal question, it necessarily turns on an analysis of the facts, which can lead to exceedingly fine distinctions." *Id.* at ¶ 11, citing *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52 ("this analysis may be sometimes difficult to perform and

---

[2] Both appellant and the state assert that the appropriate standard of review in this appeal is plain error. However, plain error review is reserved for those instances in which a party fails to preserve the issue of merger at trial by failing to raise it at the time of sentencing. *Bailey* at ¶ 7. Here, appellant's trial counsel argued at sentencing that the offenses should merge as allied offenses of similar import. Accordingly, plain error review is not appropriate in this case.

10.

may result in varying results for the same set of offenses in different cases"), *abrogated in part by Ruff* at ¶ 1.

{¶ 20} Appellant argues on appeal, as he did before the trial court, that his convictions for aggravated murder, felonious assault, and aggravated burglary should have merged as allied offenses of similar import because all of the offenses were committed simultaneously when he shot a single victim, Johanna, and was motivated by a single animus, namely the intention to murder Johanna. Upon review, we find that these offenses were committed separately, and thus are not subject to merger under R.C. 2941.25.

{¶ 21} Offenses are committed separately within the meaning of R.C. 2941.25(B) if one offense is completed before the other offense occurs. *State v. Turner*, 2d Dist. Montgomery No. 24421, 2011-Ohio-6714, ¶ 24. Indeed, "'when one offense is completed prior to the completion of another offense during the defendant's course of conduct, those offenses are separate acts.'" *State v. Woodard*, 2d Dist. Montgomery No. 29110, 2022-Ohio-3081, ¶ 38, quoting *State v. Mooty*, 2014-Ohio-733, 9 N.E.3d 443, ¶ 49 (2d Dist.).

{¶ 22} Given the fact that this appeal arises from an *Alford* plea, and in light of appellant's failure to request a bill of particulars or conduct extensive discovery prior to entering his plea, the factual predicate for the offenses to which appellant pled is not well-developed in the record before us on appeal. A defendant seeking to establish that

11.

several offenses are allied offenses of similar import subject to merger bears the burden of introducing specific facts supporting merger into the record before the trial court. *Smith*, *supra*, 2023-Ohio-866, --- N.E.3d ----, at ¶ 11. Appellant failed to do so in this case. Thus, our merger analysis relies upon the state's recitation of the facts supporting appellant's plea at the plea hearing, the factual statements in the presentence investigation report, and the parties' merger arguments at sentencing. Taken together, the record does not support appellant's merger argument.

{¶ 23} In the present case, appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which proscribes knowingly causing or attempting to cause "physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." According to the state, the charge of felonious assault was based upon "multiple defects in the house" that were caused by appellant's firing of several shots into Johanna's home during his forced entry.

{¶ 24} One who shoots into a residence known to be occupied, and actually occupied, may be convicted of felonious assault irrespective of whether the shot strikes the occupants therein. *See State v. Elko*, 8th Dist. Cuyahoga No. 83641, 2004-Ohio-5209, ¶ 54, *abrogated in part by State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498 ("Firing a pistol into a window, without knowing who could be behind it, satisfies a knowing attempt to cause physical harm."); *State v. Gowdy*, 6th Dist. Erie No. E-06-071, 2009-Ohio-385, ¶ 28-29 (applying *Elko* and affirming two felonious assault

12.

convictions where the defendant fired shots through the bedroom window of a residence where two individuals were sleeping, even though the defendant allegedly lacked any knowledge as to who occupied the residence); *State v. Mallet*, 8th Dist. Cuyahoga No. 76608, 2000 WL 1176880, *3 (Aug. 17, 2000) (comparing the offenses of felonious assault and discharging a firearm at or into a habitation and concluding that "in most instances, a person who improperly discharges a firearm at a house will also commit the offense of felonious assault. However, this will not be the case if an individual is not present in the house when the shots are fired."). This is precisely what appellant did when he shot through the door of Johanna's home at 11 p.m., knowing that A.F. and either Johanna or Knute, or both, were inside. Thus, appellant's felonious assault was completed as soon as he shot at the locked door in order to gain entry into Johanna's home.

{¶ 25} Once inside the residence, appellant located Johanna and executed her by shooting her in the head with his shotgun. There is no evidence in the record that Johanna was struck and killed by appellant's shots into the home through the door. Instead, it was appellant's subsequent shot to Johanna's head that gave rise to the state's aggravated murder charge under R.C. 2903.01(A), which provides: "No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy." Since the aggravated murder was not

13.

completed until appellant entered the residence and shot Johanna, it was committed separately from the felonious assault.

{¶ 26} After executing Johanna, appellant made his way upstairs and located A.F. Appellant then removed A.F. from her bedroom and placed her inside his vehicle despite having no legal custody of her at the time. According to the state, appellant's removal of A.F. from the home constituted aggravated burglary under R.C. 2911.11(A)(1), which provides:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another.

{¶ 27} Appellant rejects the state's assertion that his removal of A.F. from the home constituted aggravated burglary, insisting that the record contains no evidence that such removal physically harmed A.F. in any way. "Physical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3); *see also State v. Roberson*, 2018-Ohio-1955, 113 N.E.3d

14.

204, ¶ 9 (6th Dist.) (applying R.C. 2901.01(A)(3) to aggravated burglary under R.C. 2911.11(A)(1)). "The slightest physical harm is sufficient * * *." *City of Columbus v. Bonner*, 10th Dist. Franklin No. 81AP-161, 1981 WL 3356, *1 (Jul. 21, 1981).

{¶ 28} The record is devoid of any evidence as to the specific manner in which appellant removed A.F. from the home. However, the state, at sentencing, argued that A.F. suffered physical harm when appellant "grabbed [her] arm and pulled her out of bed and into his car." This assertion is plausible from the record before us. Indeed, A.F. was sleeping in her bedroom at the time of the shooting, and it could thus be inferred that appellant had to apply some force in waking her and getting her out of her bed. Such force, however slight, could have physiologically impaired A.F. by restricting her movement, and thus constituted physical harm. *See City of Fostoria v. Pruitt*, 3d Dist. Seneca No. 13-78-33, 1979 WL 207858, *2 (Apr. 3, 1979) (finding that the defendant's "attempt to encompass the patrolman's arms constituted a physiological impairment being an attempt to limit the scope of arm movement and also constituted physical harm").

{¶ 29} Moreover, we reiterate that the burden of demonstrating entitlement to merger is upon appellant, not the state. *Smith*, *supra*, 2023-Ohio-866, --- N.E.3d ----, at ¶ 10. Here, appellant did not seek to introduce any evidence, and did not make any representations to the court, as to how he removed A.F. from the home. Thus, we are left

15.

to presume certain facts in order to conduct our merger analysis.[3]  Under such circumstances, we must presume a set of facts that supports the decision of the trial court on the merger issue.  *State v. Cartlidge*, 3d Dist. Seneca No. 13-18-33, 2019-Ohio-1283, ¶ 33, citing *State v. Brandon*, 45 Ohio St.3d 85, 543 N.E.2d 501 (1989) ("[I]f the presumption of a given set of facts is necessary to determine if the offenses were allied offenses of similar import, we must presume the facts established at the change of plea hearing would have validated, rather than invalidated, the judgment of the trial court."). Therefore, we find that appellant's aggravated burglary was not complete until he removed A.F. from the home, which took place after the felonious assault and aggravated murder.

{¶ 30} In sum, we find that the offenses of felonious assault, aggravated murder, and aggravated burglary were committed separately.  Appellant committed felonious assault by shooting a hole through the front door of Johanna's home.  He then committed aggravated murder by shooting Johanna in the head once inside the residence.  Finally, appellant committed aggravated burglary when he removed A.F. from the home.  Since these offenses were committed separately, they are not allied offenses of similar import.

{¶ 31} Accordingly, we find appellant's first assignment of error is not well-taken.

---

[3] To avoid the application of this presumption, appellant (and his defense counsel) could have either (a) come to an agreement with the state as to merger prior to entering his plea, or (b) fully developed the record by insisting that the state detail the specific facts that supported each offense to which he pled.  Appellant did neither.

16.

## B.     Costs of Confinement and Supervision

{¶ 32} In appellant's second assignment of error, he argues that the trial court erred in ordering him to pay the costs of confinement and supervision.

{¶ 33} "Our standard of review on this issue is whether the imposition of costs was contrary to law." *State v. Ivey*, 6th Dist. Lucas No. L-19-1243, 2021-Ohio-2138, ¶ 7, citing R.C. 2953.08(A)(4) and (G)(2)(b).  The imposition of the costs of supervision and confinement is discretionary, and must be supported by the trial court's finding that the defendant has, or reasonably may be expected to have, the ability to pay.  *State v. Gray*, 6th Dist. Lucas No. L-15-1072, 2015-Ohio-5021, ¶ 20-21; *State v. Wymer*, 6th Dist. Lucas No. L-18-1108, 2019-Ohio-1563, ¶ 14; R.C. 2929.18(A)(5)(a)(i), (ii); R.C. 2945.51(D).  "Although the 'best practice' is for the trial court to put the basis for its findings regarding a defendant's ability to pay on the record, the trial court is not *required* to explicitly make findings on the record." (Emphasis sic.)  *Ivey* at ¶ 8, quoting *State v. Taylor*, 163 Ohio St.3d 508, 2020-Ohio-6786, 171 N.E.3d 290, ¶ 2.  "Although the court need not conduct a formal hearing as to the defendant's ability to pay discretionary costs, a finding of a defendant's ability to pay 'must be supported by clear and convincing evidence in the record.'"  *State v. Velesquez*, 6th Dist. Lucas No. L-22-1167, 2023-Ohio-1100, ¶ 10, quoting *State v. Wymer*, 6th Dist. Lucas No. L-18-1108, 2019-Ohio-1563, ¶ 14.

17.

**{¶ 34}** In this case, the trial court indicated at the sentencing hearing that it "read the presentence report." This report provides an overview of appellant's work history and educational background, indicating that appellant was previously employed full time at an Amazon fulfillment center and has some college education. We have previously stated that "[t]he trial court's indication that it reviewed a PSI that includes information on the defendant's financial, educational, and vocational background is sufficient to support the trial court's imposition of discretionary costs." *Ivey* at ¶ 8, citing *State v. Cantrill*, 6th Dist. Lucas No. L-18-1047, 2020-Ohio-1235, ¶ 91. Consequently, we reject appellant's contention that the trial court improperly imposed costs of confinement and supervision, and we find appellant's second assignment of error not well-taken.

### III. Conclusion

**{¶ 35}** In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

18.

Gene A. Zmuda, J.

_____
JUDGE

Myron C. Duhart, P.J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.