[Cite as *State v. Wright*, 2025-Ohio-3176.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio                                    Court of Appeals No. WM-24-014

      Appellee                              Trial Court No.  23-CR-77

v.

Ron E. Wright                                    **<u>DECISION AND JUDGMENT</u>**

      Appellant                            Decided: September 5, 2025

* * * * *

Katherine J. Zartman, Williams County Prosecuting Attorney, and,
Emil G. Gravelle, III,  Assistant Prosecuting Attorney, for appellee.

Joseph Sobecki, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant Ron E. Wright appeals the judgment of the Williams County Court of Common Pleas, convicting him of three counts of grand theft, sentencing him to a total prison term of 34 months, and ordering him to pay nearly $51,649.44 in restitution.  For the following reasons, the trial court's judgment is affirmed.

**I. Factual Background and Procedural History**

{¶ 2} In the spring of 2022, Wright entered into an agreement with Gregory Reiman, the owner of Bryan Auto Depot, to construct a building addition.  Reiman wrote

a $25,000.00 check to Wright in April 2022, and another in May 2022. Wright cashed the checks and dug a trench, but did not perform any other meaningful work.

{¶ 3} Related to this construction project, Wright rented a trailer and mini excavator from Black Swamp Equipment, LLC ("Black Swamp"). He did not return the equipment. Black Swamp located the equipment four days later when an unrelated business contacted Black Swamp asking why the equipment was parked in that business's lot.

{¶ 4} From these allegations, the Williams County Grand Jury indicted Wright on three counts of grand theft in violation of R.C. 2913.02(A)(2) and (B)(2), felonies of the fourth degree. Counts One and Two pertained to the two $25,000.00 checks written in April and May, respectively. Count Three pertained to the unreturned equipment from Black Swamp.

{¶ 5} On April 24, 2024, Wright entered into an agreement with the State whereby he would plead guilty to Counts One and Two and enter an *Alford* plea to Count Three. In exchange, the State agreed to recommend that the sentences for the offenses be served concurrently to one another and concurrent to a prison term that he was serving in Indiana from which he did not expect to be released until 2030. Additionally, the parties both agreed and reserved the right to present evidence as to an appropriate amount of restitution.

{¶ 6} The trial court accepted Wright's pleas, found him guilty, and continued the matter for the preparation of a presentence investigation report.

2.

{¶ 7} At the restitution and sentencing hearing, the State presented the testimony of Gregory Burkholder on behalf of Black Swamp. Burkholder introduced an invoice showing that Wright owed $1,509.44 for keeping the equipment beyond the initial rental period and for the cost of picking up the equipment from where Wright had left it. Wright objected to the invoice on the grounds that he had not received it in discovery. The trial court overruled his objection.

{¶ 8} The State also called Reiman to testify regarding the two $25,000.00 checks that he wrote, copies of which were entered into evidence. Reiman further testified regarding a $140.00 bill that he paid to Oberlin for dumping dirt from the trench that Wright had dug.

{¶ 9} Having heard the parties' arguments on restitution, the trial court moved to sentencing.

{¶ 10} The State argued for a prison term in light of Wright's criminal history and his pattern of similar crimes. It acknowledged its prior plea agreement and recommended that any prison term be served concurrently to the sentence from Indiana. Contrary to the plea agreement, the State did not recommend that any prison sentences from the present case be served concurrently to each other. Notably, however, it also did not recommend that they be served consecutively.

{¶ 11} Upon considering the arguments of the State, defense counsel, and Wright, the trial court ordered Wright to serve a prison term of 17 months on Count One, 17 months on Count Two, and 12 months on Count Three. It ordered the sentences for Counts One and Two to be served consecutively to one another, but concurrently with the

3.

sentence for Count Three, for a total prison term of 34 months. It further ordered the sentences to be served consecutively to the Indiana prison term. In addition, the trial court ordered Wright to pay $50,140.00 in restitution to Reiman and $1,509.44 in restitution to Black Swamp.

{¶ 12} Shortly after sentence was imposed, the trial court recalled the case because defense counsel noted that the trial court did not make any findings relative to its decision to impose consecutive sentences. Rather than appeal the issue, defense counsel, in a self-described act of good faith, thought it best to bring the court back into session so it could make the necessary findings.

## II. Assignments of Error

{¶ 13} Wright timely appeals from his judgment of conviction, asserting four assignments of error for review:

1. The State violated the terms of the plea agreement by failing to request that each count be served concurrently with each other.

2. The State violated the terms of the plea agreement by undercutting it after offering a less than neutral recitation of the part of the agreement that it followed.

3. The State committed a Brady violation by withholding Victim 2's final invoice.

4. The trial court violated the Fourteenth Amendment to the United States Constitution by sentencing Wright to consecutive sentences for

4.

Counts One and Two because they are allied offenses of similar import that should merge at sentencing.

### III. Analysis

### A. Breach of the Plea Agreement

{¶ 14} Wright's first and second assignments of error both pertain to the State's performance of its obligation under the plea agreement and will therefore be discussed together.

{¶ 15} A plea agreement is considered a contract between the State and a criminal defendant and is subject to general contract law. *State v. Watkins*, 2016-Ohio-5756, ¶ 8 (6th Dist.), quoting *State v. Liskany*, 2011-Ohio-4456, ¶ 190 (2d Dist.). Accordingly, if one side breaches the agreement, the other side is entitled to either rescission or specific performance of the plea agreement. *State v. Walker*, 2006-Ohio-2929, ¶ 13 (6th Dist.), citing *Santobello v. New York*, 404 U.S. 257 (1971). *See State v. Fenderson*, 2015-Ohio-565, ¶ 20-21 (6th Dist.) (Where specific performance was a viable option, the court ordered a remand for resentencing.).

{¶ 16} In his first and second assignments of error, Wright argues that the State breached the plea agreement when it failed to recommend that the prison sentences on Counts One, Two, and Three be served concurrently to one another. Furthermore, Wright argues that the State breached the spirit of the plea agreement when it argued for a prison term, asking for him "to be punished significantly enough for him to finally get it through his head that he needs to stop defrauding people who trust him" and requesting "that [the trial court] order him to serve a prison term, mainly because of his history of

5.

these types of offenses. And the fact that he is a danger to society, not in the way that we usually think of it, as violent danger to society, but he is an economic danger to our citizens and our society. So I request that full restitution to both of the victims and a prison term."

{¶ 17} Wright, however, did not object to the State's purported breach. Where a defendant fails to object to the State's breach of the plea agreement, the alleged error is forfeited, and an appellate court reviews for plain error only. *State v. Vasquez*, 2024-Ohio-2496, ¶ 25 (6th Dist.), citing *State v. Hansen*, 2012-Ohio-4574, ¶ 15 (7th Dist.); *Puckett v. U.S.*, 556 U.S. 129 (2009). Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To demonstrate plain error, Wright must show "that an error occurred, that the error was obvious, and that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome. . ." *State v. Echols*, 2024-Ohio-5088, ¶ 50, citing *State v. Knuff*, 2024-Ohio-902, ¶ 117. "Plain error should be noticed only 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Clayton*, 62 Ohio St.2d 45, 47 (1980), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 18} This court has recently examined whether the State's failure to comply with a plea agreement constitutes plain error.

{¶ 19} In *State v. Roby*, 2022-Ohio-223 (6th Dist.), this court held that the State's failure to remind the trial court that it was not recommending a prison term was not plain

6.

error. There, Roby pleaded guilty to aggravated possession of drugs and illegal conveyance of drugs. *Id.* at ¶ 4. In exchange, the State agreed to recommend that if a prison sentence would be imposed on the illegal conveyance charge that it be capped at 18 months, but it confirmed that it was "not recommending a prison term." *Id.* at ¶ 4-5. At sentencing, the State recommended "as to the . . . the illegal conveyance [case], . . . that there would be a cap of eighteen months . . . [but] [o]ther than that there have been no promises made . . . and we would leave [Roby's sentence] up to the sound discretion of the Court." *Id.* at ¶ 8. The trial court sentenced Roby to 36 months in prison on the illegal conveyance charge. *Id.* at ¶ 9.

{¶ 20} On appeal, Roby recounted that after it had imposed the sentence, the trial court commented, "I would also indicate that the Court does recognize that there was a recommendation of eighteen months from the State of Ohio." *Id.* at ¶ 14. He argued that the court sentenced him under the mistaken belief that the State *was* recommending prison time, and the State violated "an affirmative obligation to remind the court that it was *not* recommending a prison sentence." (Emphasis sic.) *Id.* at ¶ 15.

{¶ 21} This court rejected Roby's arguments. First, it determined that Roby did not identify any authority that the State had a duty to correct the court's comments made after sentencing, and thus it held that the State did not breach the plea agreement. *Id.* at ¶ 16. Further, this court determined that Roby could not establish "that the outcome of his case would have been different if the State had 'reminded' the trial court of its recommendation at the conclusion of the sentencing hearing." *Id.* at ¶ 17. In its reasoning, this court identified that the trial court "made an independent determination"

7.

that Roby's conduct justified the maximum prison term, pointing to the trial court's statements that there was "no other way" to address Roby's addiction but to impose the maximum sentence, and its doubt that "community control would be effective" given that "the recidivism factors are very high in this particular case." *Id.* at ¶ 18. This court concluded that "[t]here is no reason to believe that the trial court would have changed its mind if the state had 'reminded' the court," noting that even if the trial court was under the misimpression that the State was recommending a prison term of 18 months, "it *rejected* that recommendation by imposing the maximum sentences." (Emphasis sic.) *Id.* This court, therefore, held that the State's failure to remind the trial court that it was not recommending a prison term was not plain error. *Id.* at ¶ 19.

{¶ 22} In contrast, in *State v. Vasquez*, 2024-Ohio-2496 (6th Dist.), this court held that the State's recommendation of a 25-year prison sentence violated the terms of the plea agreement and constituted plain error. In that case, Vasquez agreed to plead guilty to one count of trafficking in drugs and five counts of sexual battery in two separate cases. *Id.* at ¶ 3. The State, in exchange, agreed to dismiss several other charges and agreed to recommend a total 15-year prison term between the two cases. *Id.* Prior to accepting his plea, the trial court notified Vasquez that it was not bound by the recommended sentence. *Id.* at ¶ 4.

{¶ 23} At the sentencing hearing, the State asked for a 10-year prison term in the first case and a 15-year prison term in the second case, to be served consecutively, for a total prison term of 25 years. *Id.* at ¶ 10-11. The trial court imposed a total prison term of 25 years. *Id.* at ¶ 14.

8.

{¶ 24} On appeal, this court distinguished *Roby*, determining that the recommended sentence was an integral part of the plea agreement, and that the State's recommendation of 25 years significantly deviated from the agreement. *Id.* at ¶ 34. As to prejudice, it concluded, "it cannot be said that the State's recommendation did not contribute to the trial court's sentence." *Id.* This court, therefore, reversed Vasquez's convictions and remanded for resentencing. *Id.* at ¶ 36.

{¶ 25} Turning to the present case, plain error review requires this court to examine whether there is a reasonable probability that the trial court would have imposed the same sentence even if the State had made the recommendations required by the plea agreement. In this case, no such reasonable probability exists.

{¶ 26} Here, Wright has an extensive criminal history, which the trial court recounted before sentencing him, including convictions for check deception, forgery, receiving stolen property, falsification and escape, fraud, false sales, home improvement fraud, and theft and identity deception. The trial court went through Wright's past and indicated its difficulty in believing his professed contrition and explanation of his offenses. The trial court also noted the role that Wright's meth addiction played at the time of the offense and the fact that he has spent around five years in prison for similar offenses.

{¶ 27} Further, as in *Roby*, there is no reason to believe that the trial court would have followed the recommendation and imposed concurrent sentences since it also rejected the State's recommendation for the sentences to be served concurrently to the

9.

Indiana term. This is in contrast to the factual situation in *Vasquez*, in which the trial court imposed the exact sentence recommended by the State.

{¶ 28} The record demonstrates, therefore, that like *Roby*, and unlike *Vasquez*, the trial court sentenced Wright upon its own consideration of the sentencing factors and not the State's recommendation. Consequently, because there is not a reasonable probability that a different outcome would have occurred, the State's failure to recommend internally concurrent sentences is not plain error.

{¶ 29} Wright separately argues that the State breached the terms of the plea agreement when it advocated for a prison sentence. He claims that he was induced to plead guilty under the impression that he would serve no additional prison time from these offenses. He thus contends that when the State argued for a prison sentence, recommending that he be "punished significantly enough" to learn his lesson and describing him as an economic danger to society, it violated the spirit of the plea agreement.

{¶ 30} Nothing in the plea agreement, however, prevented the State from asking for a prison term. Indeed, the plea agreement contemplated a prison term instead of community control, just with the provision that the State would recommend the terms be served concurrently. Furthermore, as discussed above, the trial court's sentence was reflective of its own assessment of Wright's conduct. There is, thus, no reasonable probability that the outcome of the proceedings would have been different if the State had not argued for a prison term. Consequently, the State's argument for a prison term did not breach the plea agreement and was not plain error.

10.

**{¶ 31}** Accordingly, Wright's first and second assignments of error are not well-taken.

### B. *Brady* Violation

**{¶ 32}** In his third assignment of error, Wright argues that the State committed a *Brady* violation when it produced the Black Swamp invoice for the first time at the restitution hearing.

**{¶ 33}** "In *Brady*, the United States Supreme Court held that a state violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution by suppressing evidence favorable to the accused where the evidence is material to guilt." *State v. Brown*, 2024-Ohio-749, ¶ 30, citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "To establish a *Brady* violation, a defendant must demonstrate (1) that the evidence is favorable to the defendant, because it is either exculpatory or impeaching, (2) that the evidence was willfully or inadvertently suppressed by the state, and (3) that the defendant was prejudiced as a result." *Id.*, citing *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). "Evidence is material—or prejudicial—'when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Id.*, quoting *Turner v. United States*, 582 U.S. 313, 324 (2017).

**{¶ 34}** Here, Wright does not argue that the invoice is exculpatory regarding the offense of grand theft. Instead, he argues that it was favorable to the defense because it "shows beyond a reasonable doubt that Wright owes a specific amount to [Black Swamp]." He suggests this is material because, had it been disclosed, he would not have

contested the amount of restitution, which he contends undercut his strategy of taking responsibility for his offenses and negatively impacted him at sentencing.

{¶ 35} Upon review, in addition to the invoice being neither exculpatory nor impeaching and there being no evidence that it was "suppressed," the State's failure to disclose the invoice prior to the restitution hearing was not a *Brady* violation for two reasons.

{¶ 36} First, "[s]trictly speaking, *Brady* is not violated when disclosure occurs during trial, even when disclosure surprises the defendant with previously undisclosed evidence." *Brown* at ¶ 31, quoting *State v. Iacona*, 93 Ohio St.3d 83, 100 (2001). Here, the State disclosed the invoice during the restitution hearing.

{¶ 37} Second, Wright was not prejudiced as a result. Wright concedes that if the invoice had been disclosed to him prior to the hearing, he would have stipulated to the amount owed, which was ultimately what the trial court ordered as restitution. Thus, no change in the outcome would have occurred. Further, his suggestion that he would not have been sentenced as harshly if he did not contest restitution is pure speculation. Once the invoice was introduced, Wright did not dispute the amount owed and his cross-examination was extremely limited. In addition, his own testimony was limited to his lack of intent to defraud Black Swamp and his explanation of why the equipment was not returned. He did not suggest that he did not owe Black Swamp for failing to return the equipment at the end of the rental period. Thus, his initial challenge of the specific amount owed to Black Swamp did not meaningfully undercut his willingness to take responsibility for his actions. Moreover, the trial court already considered his attempt to

12.

take responsibility but gave more weight to his history of similar criminal conduct. No reasonable probability exists, therefore, that the trial court would have sentenced Wright to a lesser sentence if the State had disclosed the invoice and Wright stipulated to the restitution.

{¶ 38} Accordingly, the State did not commit a *Brady* violation. Wright's third assignment of error is not well-taken.

### C. Merger

{¶ 39} In his fourth and final assignment of error, Wright argues that the trial court should have merged the two offenses of grand theft pertaining to the two $25,000 checks. He argues that the two offenses were not committed separately because they were both derived from the same construction project.

{¶ 40} "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, which prohibit multiple punishments for the same offense." *State v. Rogers*, 2022-Ohio-4126, ¶ 16 (6th Dist.). That section provides,

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

**{¶ 41}** The test for determining whether allied offenses should be merged is well-established:

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?  An affirmative answer to any of the above will permit separate convictions.  The conduct, the animus, and the import must all be considered.

*State v. Bailey*, 2022-Ohio-4407, ¶ 10, quoting *State v. Earley*, 2015-Ohio-4615, ¶ 12, quoting *State v. Ruff*, 2015-Ohio-995, ¶ 31.  "The defendant bears the burden of establishing his entitlement to the protection, provided by R.C. 2941.25, against multiple punishments for a single criminal act."  *State v. Washington*, 2013-Ohio-4982, ¶ 18, quoting *State v. Mughni*, 33 Ohio St.3d 65, 67 (1987); *State v. Smith*, 2023-Ohio-866, ¶ 10 (6th Dist.).

**{¶ 42}** Whether offenses should be merged as allied offenses under R.C. 2941.25 is generally reviewed de novo.  *Bailey* at ¶ 6.  Wright, however, did not argue or preserve the issue of merger before the trial court.  Thus, the review is limited to plain error.  *Id.* at ¶ 7, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 28 ("the failure to raise the allied offense issue at the time of sentencing forfeits all but plain error.").

**{¶ 43}** Here, the trial court did not err when it did not merge the two offenses.  In April, Wright received a $25,000 check that he cashed for which he performed very limited work.  Forty-five days later, Wright returned to Reiman and asked for an additional $25,000.  Regardless of whether the two requests for payment were related to

14.

the same contract, Wright made a separate decision to ask for each. Wright, therefore, committed the two offenses separately.

{¶ 44} Accordingly, Wright's fourth assignment of error is not well-taken.

## IV. Conclusion

{¶ 45} For the foregoing reasons, substantial justice has been done the party complaining and the judgment of the Williams County Court of Common Pleas is affirmed. Wright is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.
JUDGE

Charles E. Sulek, P. J.
JUDGE

Gene A. Zmuda, J.
CONCURS, AND WRITES
SEPARATELY.
JUDGE

**Zmuda, J., concurring.**

{¶ 46} Because I agree with the majority's conclusion in affirming but would clarify the plain error analysis applied to a breach of plea agreement, relevant to Wright's first and second assignments of error, I write separately in concurrence.

{¶ 47} Wright argued the state breached the plea agreement by failing to recommend the sentence for all three counts in his case be served concurrently to each

other, as contained within the plea agreement. The state did not recommend the three counts of the present case be served concurrently, and the trial court imposed an aggregate, consecutive sentence in this case totaling 34 months. The trial court further ordered Wright to serve the sentence in this case consecutively to the Indiana prison term. Wright is due to be released in Indiana in 2030.

{¶ 48} In addressing Wright's first and second assignments of error, the majority correctly notes Wright's failure to object in the trial court and our plain error review on appeal. I write separately, however, to clarify this standard as it relates to the breach of a plea agreement, consistent with my dissent in *State v. Vasquez,* 2024-Ohio-2496 (6th Dist.).

{¶ 49} In reviewing the breach of a plea agreement for plain error, we must find error, or a breach of the plea agreement, and that, but for the error the results of the proceeding would have been different. *State v. Roby,* 2022-Ohio-223, ¶ 12 (6th Dist.). In applying this test, the majority references *State v. Vasquez,* 2024-Ohio-2496 (6th Dist.), and the additional factor considered in that case: whether the breach of the plea agreement concerned an integral term of that agreement. I find this additional consideration confuses plain error review.

{¶ 50} First, Wright's lack of objection to the prosecutor's breach of his plea agreement undermines any argument that the promise within that agreement was an integral part of Wright's decision to enter a plea. *State v. Liles,* 2015-Ohio-3093, ¶ 23 (3d Dist.). A defendant's expectations related to the plea, moreover, are irrelevant to plain

error review of the trial court's sentencing determination, and whether the breach influenced that determination.

{¶ 51} Plain error review requires consideration of the result of the prosecutor's breach, or whether the breach affected the resulting sentence. Considering the record, we must determine whether the trial court was influenced by the prosecutor's breach of the promise contained within the plea agreement, or whether the trial court made an independent determination regarding the sentence it imposed. *Roby* at ¶ 17-18. In *State v. Roby,* 2022-Ohio-223, we reviewed the record and noted the trial court made an independent determination before imposing a maximum prison term, considering the trial court's comments at sentencing, clearly articulating its reasoning. Plain error review requires nothing more.

{¶ 52} As the majority notes, the trial court in Wright's case conducted an independent assessment of Wright's case and his record before imposing sentence. Therefore, I agree that the sentence in this case reflects the trial court's own assessment of Wright's conduct. I agree that the prosecutor's breach of the plea agreement did not create an exceptional circumstance requiring notice of plain error to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 53} With this clarification, I respectfully concur.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

18.