[Cite as *State v. McMillon*, 2025-Ohio-5304.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                           Court of Appeals No.  WD-24-085

       Appellee                    Trial Court No. 2023 CR 0448

v.

Jason W. McMillon                **DECISION AND JUDGMENT**

       Appellant              Decided: November 25, 2025

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney,
for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellant, Jason McMillon, appeals from the February 23, 2024 judgment of the Wood County Court of Common Pleas convicting him of one count of domestic violence. He argues that the trial court violated his Sixth Amendment right to confront witnesses, and erroneously admitted hearsay statements the victim made, by admitting a recording of the victim's 911 call into evidence at trial. For the following reasons, we affirm the trial court's judgment.

## II. Facts and Procedural Background

{¶ 2} On October 19, 2023, appellant was indicted on one count of domestic violence in violation of R.C. 2919.25(A) and (D)(3), a fourth-degree felony. The charge arose from events that occurred on September 3, 2023. That evening, the Wood County Sheriff's Office received a 911 call from the Knights Inn hotel in Rossford, Ohio. The 911 call, as appellant transcribed in his brief, consisted of the following conversation:

> DISPATCH: Wood County 911; what's your emergency? CALLER: Um, I need someone here.
> DISPATCH: Ok is it for a medical emergency or a police matter?
> CALLER: Um, the second one.
> DISPATCH: Ok; what room number are you in?
> CALLER: Um, you'll have to come to 243.
> DISPATCH: Ok; are you at the Knights Inn?
> CALLER: Yeah.
> DISPATCH: Ok; and what's going on?
> CALLER: Mm.
> DISPATCH: Are you able to talk right now?
> CALLER: No.
> DISPATCH: You're not? Ok. I'm going to ask you yes or no questions; is it a domestic violence situation?
> CALLER: Yes.
> DISPATCH: Is there a person there with you?
> CALLER: Yes.
> DISPATCH: Ok. Stay on the phone even if you can't talk, ok? Just give me one second, you're not going to be able to hear me while I get help to room 243.
> MALE VOICE IN THE BACKGROUND: If you wanna be a fuckin' whore, but you gotta – just fuckin' leave. Why shouldn't you just fuckin' leave? ... Are you gone yet?... Hello?
> CALLER: Please don't.
> MALE VOICE IN THE BACKGROUND: Are you calling the cops on me?
> DISPATCH: Ok; I'm going to ask you some yes or no questions still. Has it been physical?
> CALLER: Yeah.
> DISPATCH: Do you need EMS?
> CALLER: No.
> DISPATCH: Does he have any weapons?
> CALLER: Yeah. Knives.
> DISPATCH: Um, ok. But just like I said, just answer yes or no. Um, when you say weapons, is it a gun?

2.

CALLER: No.
DISPATCH: Knife?
CALLER: Yes.
DISPATCH: Has he used it?
CALLER: Who is it? Hold on, Kareem's here, I gotta go.
[CALLER HANGS UP.]

{¶ 3} Two Rossford Police officers responded to the call and found appellant and his wife, L.M., in adjoining rooms 241 and 243. The 911 dispatcher had previously informed the officers that it was a potential domestic violence situation so the officers separated appellant and L.M. upon their arrival. The officers observed that L.M.'s face appeared swollen, bruised, and discolored.  Appellant was arrested at the scene and charged with domestic violence.  Appellant was arraigned on October 30, 2023, and entered a plea of not guilty.

**Appellant's Motion in Limine**

{¶ 4} On February 1, 2024, appellant filed a motion in limine seeking to exclude admission of the responding officers' body camera footage at trial.[1]  On February 6, 2024, the state filed a notice of intent to introduce the 911 recording at trial.  The trial court held a hearing on appellant's motion on February 7, 2024.  At the outset of the hearing, appellant made an oral motion in limine to also exclude admission of the 911 tape at trial, having been notified of the state's intent after filing its written motion.   In response, the state indicated that the victim, L.M., could not be located for trial and that they intended to proceed by introducing the 911 recording and the officers' body camera

---

[1] The trial court granted appellant's motion in limine to exclude the officer's body camera footage.  We reference that portion of appellant's motion solely for context.  The trial court's decision on that issue is not part of this appeal.

3.

footage, in addition to the officer's testimony, to prove appellant's guilt. Appellant argued that presenting the 911 recording at trial, without the ability to cross-examine L.M., violated his Sixth Amendment right to confront witnesses. He further argued that any statements made on the 911 recording or the body camera footage constituted inadmissible hearsay.

{¶ 5} Relevant to the present appeal, the trial court denied appellant's motion as to the 911 call. It found that L.M.'s statements were made during an ongoing emergency and, therefore, were nontestimonial and not subject to the right of confrontation under the Sixth Amendment. The court also held that the statements were admissible hearsay statements as they satisfied both the excited utterance and present-sense impression exceptions to the general exclusion of hearsay statements. The trial court's order denying appellant's motion was journalized February 14, 2024.

{¶ 6} Appellant's two-day jury trial commenced on February 21, 2024. As the state anticipated, L.M. did not attend. The parties elicited the following testimony from the two witnesses called during the state's case-in-chief:[2]

### Testimony of Corporal Juliann Flage

{¶ 7} At the time of trial, Julianne Flage served as a corporal with the Wood County Sheriff's Office. Flage testified that she had been working for the Sheriff's Office for over 18 years. In her role as a corporal, she served as a 911 dispatcher and supervised five other dispatchers. She is not the dispatcher that took L.M.'s 911 call but confirmed

---

[2] Testimony and evidence not relevant to this appeal has been omitted.

4.

that she had reviewed the recording prior to trial. The recording was then admitted into evidence and played without objection from appellant.

{¶ 8} Flage next discussed her own experience taking 911 calls. She testified that in those calls, she has heard crying, begging for help, and the sound of a physical altercation. She noted that she did not hear any crying or sounds of a physical altercation in her review of L.M.'s 911 call, a call that she described as "pretty flat." However, she testified that her training and years of experience allow her to recognize when callers are telling the truth and that in her opinion, in response to appellant's questioning during cross-examination, that "[L.M.], was asking for help." When asked why a dispatcher may switch to using yes-or-no questioning, as occurred during L.M.'s call, she explained that yes-or-no questioning is a method that dispatchers are trained to use to create a safe environment when a caller is in a potentially violent situation.

### Testimony of Officer Tyler Nagy

{¶ 9} At the time of trial, Officer Tyler Nagy, had served as an officer with the Rossford Police Department for approximately one year. Immediately prior to that, he had served as a police officer in North Baltimore, Ohio for four years, with a total overall experience of 12 years as a police officer.

{¶ 10} Officer Nagy testified that he was present at the Knights Inn on the night appellant was arrested. He stated that he and his partner were dispatched to the motel for a potential domestic violence situation. As they approached appellant and L.M.'s room, they observed that the door was open and they heard appellant and L.M. arguing inside the room. Nagy and his partner entered and separated appellant and L.M. for questioning.

5.

He testified that while speaking with L.M., he "observed swelling above [her] right eye." He also observed "swelling below her right eye with discoloration, bruising * * * [and] some swelling underneath her left eye." Nagy's partner then took pictures of L.M.'s face. During his testimony, he identified the photographs his partner took of L.M. on the night of the incident and confirmed that they accurately depicted his observations. The photographs were admitted into evidence over appellant's objection. Nagy then testified that based on his years of experience and training, he believed that appellant's injuries were consistent with a domestic violence offense. Based on this conclusion, Officer Nagy and his partner arrested appellant.

### Appellant's Crim.R. 29 Motion for Judgment of Acquittal

{¶ 11} The state rested its case-in-chief at the conclusion of Nagy's testimony. Appellant then made a motion for acquittal pursuant to Crim.R. 29. He argued that the state failed to introduce sufficient evidence to show that he had knowingly assaulted L.M., that an assault had even occurred, or that L.M. had suffered any physical harm. The trial court denied appellant's motion. Appellant subsequently rested his case-in-chief without calling any witnesses or presenting any evidence. Appellant then renewed, and the trial court again denied his motion for acquittal.

### Verdict and Sentencing

{¶ 12} After the trial court denied appellant's renewed motion, the parties proceeded with closing arguments. The matter was then submitted to the jury. Following its deliberations, the jury found appellant guilty of domestic violence in violation of R.C. 2919.25(A). At his sentencing on November 4, 2024, the trial court ordered appellant to

6.

serve a 12-month prison term. The trial court's judgment was memorialized on November 7, 2024.

### III.  Assignment of Error

{¶ 13} Appellant timely appealed the trial court's judgment and assigns a single error for our review:

> The trial court erred to appellant's prejudice by improperly admitting a recording of a 911 call in violation of appellant's right to confront witnesses against him as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.

### IV.  Law & Analysis

{¶ 14} In his single assignment of error, appellant argues that the trial court erred in admitting a recording of the 911 call into evidence at trial.  Specifically, he argues that the admission of the tape violated his Sixth Amendment right to confront witnesses against him since L.M. was not available for cross-examination.  Additionally, he argues that the statements L.M. made on the recording constitute inadmissible hearsay. Before addressing the merits of appellant's arguments, we must clarify the correct standard of review of his assigned error.

{¶ 15} Appellant argues this this court should apply a de novo standard of review to both arguments under his assigned error, stating that this is the appropriate standard for an alleged violation of his Sixth Amendment confrontation rights.[3]  Upon reviewing the record, and as acknowledged by appellant, we note that he did not object to the admission

---

[3] The state does not expressly advocate for a specific standard of review, arguing that any error would be harmless in light of the evidence presented at trial.

7.

of 911 call at the time it was played at trial. Instead, appellant attempted to object to the admission of the 911 recording at the conclusion of the state's case-in-chief—that is, after the recording had already been admitted into evidence and played for the jury.

{¶ 16} It is well-established that objections should be raised at a time "when such error could have been avoided or corrected by the trial court." *State v. Bricker*, 2022-Ohio-3494, ¶ 26 (6th Dist.), citing *State v. Carter,* 89 Ohio St.3d 593 (2000). Indeed, "[e]rrors complained of that are not accompanied by a contemporaneous objection or not properly preserved by trial counsel are waived." *State v. Carswell*, 2021-Ohio-3379, ¶ 70 (6th Dist.). Moreover, because the trial court's order denying appellant's motion in limine expressly noted its ability to reconsider that ruling at trial, that denial is insufficient to preserve the alleged error for this court's review. *Toledo v. Bryant-Bey,* 2023-Ohio-4798 (6th Dist.) (holding that the denial of a pretrial motion in limine in which the trial court states that it may reconsider the issue when raised at trial does not "definitely" rule on the issue and, therefore, does not preserve the issue for appeal.) Consequently, because appellant failed to contemporaneously object to the admission of the 911 recording at trial, the alleged error was not preserved and he has waived all but plain error review. *See State v. Quarterman,* 2024-Ohio-6095, ¶ 21 (9th Dist.) (Plain-error review applied where defense counsel did not object to evidence at the time it was admitted but only objected after the state rested its case).

{¶ 17} The plain-error standard requires an appellant to show "[1] that an error occurred, [2] that the error was obvious, and [3] that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome." *State v.*

8.

*Wright*, 2025-Ohio-3176, ¶ 17 (6th Dist.). "Plain error should be noticed only with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* We find that each of appellant's arguments under his single assignment of error fail on the first element of our plain error review as he is unable to show that the trial court committed any error in admitting the 911 recording.

**a. Admission of the 911 call did not violate appellant's Sixth Amendment Right to Confrontation because the 911 call was placed during an ongoing emergency.**

{¶ 18} Appellant argues that the trial court erred in admitting the 911 recording as evidence at trial because it violated his right to confront witnesses under the Sixth Amendment. The Confrontation Clause of the Sixth Amendment guarantees a defendant the right to "be confronted with the witnesses against [them]" and "bars admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, *and* the defendant had had a prior opportunity for cross-examination." *State v. Kamer*, 2022-Ohio-2070, ¶ 164 (6th Dist.) (emphasis added).

{¶ 19} Whether the admission of a recording as evidence at trial violates the Confrontation Clause depends on whether the recorded statements are testimonial or not. *State v. Costilla*, 2024-Ohio-3221, ¶ 24 (6th Dist.) That is, the admission of a recording containing testimonial statements without the opportunity for cross-examination violates the Confrontation Clause; the admission of nontestimonial statements does not. *Id.* Statements are testimonial if the witness made them with the reasonable belief that they will be used at a trial. *In re D.K.*, 2009-Ohio-6347, ¶ 20 (6th Dist.) Nontestimonial statements are those a witness made to enable the police to assist during an ongoing

9.

emergency. *State v. William*s, 2013-Ohio-726, ¶ 6 (6th Dist.). To determine whether a statement is testimonial or nontestimonial, we use the "primary purpose" test, which provides:

> statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Costilla* at ¶ 30.

{¶ 20} Therefore, whether statements are testimonial or nontestimonial depends on whether they were made to seek assistance during an ongoing emergency. That determination is "a highly context-dependent inquiry." *State v. Stevenson*, 2023-Ohio-4853, ¶ 62 (6th Dist.) citing *Michigan v. Bryant*, 562 U.S. 344, 363 (2011). While deciding on whether evidence is testimonial or not, "a court must consider 'the statements and actions of both the declarant and interrogators.'" *Id.* Generally, "[a] 911 call to report an ongoing emergency, with statements made contemporaneously with the emergency to request police assistance, are not testimonial statements for Sixth Amendment purposes." *Costilla* at ¶ 35 (6th Dist.).

{¶ 21} Here, appellant argues that all of appellant's statements on the 911 call were testimonial because the call was not placed during an ongoing emergency and, consequently, the statements contained in the phone call were made with the intent to assist in his prosecution. Specifically, appellant points to L.M.'s "calm" demeanor during the call as evidence there was no ongoing emergency. Additionally, appellant argues that

10.

no emergency could have existed because appellant did not physically stop L.M. from leaving the hotel and, in fact, had told L.M. to leave. Having conducted our context-dependent inquiry, we find appellant's argument is without merit.

{¶ 22} L.M. began the 911 call with an ambiguous request for help when she said "[u]m, I need someone here." When the dispatcher asked her for more information, L.M. gave brief, nondescriptive responses to these basic questions, prompting the operator to ask if she was "able to talk right now." L.M. indicated that she could not. As a result, the dispatcher began asking yes or no questions to obtain the necessary information. Through these questions, the dispatcher discerned that L.M. was calling in regard to a domestic violence situation that included a physical confrontation and that the individual causing the incident was still with her and had a knife.

{¶ 23} Based on this context, we find that L.M.'s statements were intended to elicit assistance in relation to an ongoing emergency—that is, an ongoing and dangerous domestic violence incident. L.M. and the dispatcher's conversation did not go into any significant detail that would suggest that L.M. was providing statements she reasonably believed to be evidence that would later be used at trial. *Bryant* at 360 ("An objective analysis of the circumstances of an encounter and the statements and actions of the parties to it provides the most accurate assessment of the 'primary purpose of the interrogation.'"). L.M. simply called to seek assistance to avoid further violence.

{¶ 24} L.M.'s calm demeanor does not, as appellant argues, suggest that there was not an ongoing emergency. Instead, it reflects her attempts to avoid escalating the ongoing emergency. The danger of that escalation is apparent from appellant's own

11.

statement on the recording when he directly asked L.M. if she was "calling the cops on [him]."  As Flage's testimony suggests, remaining calm is a common tactic domestic violence victims use to avoid drawing attention to the call.

{¶ 25} Put simply, our review of the circumstances shows that the statements L.M. made during the 911 call related to her description of an ongoing emergency and were made in order to elicit police assistance.  As a result, they are nontestimonial and the trial court did not violate appellant's Sixth Amendment right to confrontation by admitting the recording at trial.

**b.  L.M.'s statements on the 911 call were not inadmissible hearsay.**

{¶ 26} Appellant next argues that even if we find that the 911 call was nontestimonial, the statements made therein were inadmissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." *State v. Scott*, 2024-Ohio-5849, ¶ 60 (6th Dist.).  Hearsay statements made during a 911 call are generally admissible provided they satisfy either the excited utterance or present-sense impression exceptions to the hearsay exclusion provided in Evid.R. 803.  *State v. Santanella*, 2020-Ohio-5041, ¶ 25 (6th Dist.).

{¶ 27} A present-sense impression is "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid. R. 803(1). An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or

12.

condition." Evid. R. 803(2). Both exceptions are related to "an assumption that statements or perceptions that describe events uttered during or within a short time from the occurrence of the event are more trustworthy than statements not uttered at or near the time of the event." *State v. Thompson-Shabazz*, 2017-Ohio-7434, ¶ 106 (2nd Dist.).

{¶ 28} In addressing appellant's first argument, we already concluded that L.M.'s 911 call was placed during an *ongoing* emergency. During that call, L.M. told the dispatcher that she needed police to come and described the reasons why she needed their assistance. Accordingly, it was not an error for the trial court to find the statements made by L.M., where she was describing the ongoing emergency as she was perceiving it, satisfied the present-sense impression exception and were admissible. Further, L.M. had answered the dispatcher affirmatively that her altercation with appellant had "been physical," and when the officers arrived at the motel, they saw bruising and swelling on L.M.'s face. It is evident that L.M. was still under the stress of her situation when she made the 911 call. As a result, it was not error for the trial court to find that these statements satisfied the excited utterance exception. For these reasons, we find that the trial court did not err in admitting appellant's recorded statements at trial under either of the applicable hearsay exceptions.

{¶ 29} In sum, we find that L.M.'s statements were nontestimonial and were admissible at trial under the present-sense impression and excited utterance exceptions to the prohibition against the admission of hearsay statements. As a result, the trial court did not violate appellant's rights under the confrontation clause or improperly admit hearsay statements when it admitted the 911 recording at trial. Appellant, then, is unable

13.

to identify any error, let alone plain error, in the trial court's admission of the 911 recording and we find his single assignment of error not well-taken.

## V.  Conclusion

{¶ 30} For the foregoing reasons, we find appellant's single assignment of error not well-taken and we affirm February 23, 2024 judgement of the Wood County Court of Common Pleas.

{¶ 31} Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Gene A. Zmuda, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.