[Cite as *State v. Fisher*, 2025-Ohio-4412.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

TAURUS K. FISHER,

    DEFENDANT-APPELLANT.

CASE NO. 1-24-74

OPINION AND
JUDGMENT ENTRY

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2023 0088

Judgment Affirmed

Date of Decision: September 22, 2025

APPEARANCES:

    *Dennis Belli* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**WALDICK, P.J.**

**{¶1}** Defendant-appellant, Taurus K. Fisher ("Fisher"), brings this appeal from the October 29, 2024, judgment of the Allen County Common Pleas Court. On appeal, Fisher argues that the trial judge demonstrated bias during sentencing, and that his sentence was clearly and convincingly contrary to law due to multiple errors committed by the trial court. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

**{¶2}** On February 8, 2022, law enforcement officers approached Fisher's residence on 639 S. Elizabeth Street in Lima to serve a search warrant. As officers approached the residence, Fisher fled on foot. Officers pursued Fisher, following him as he ran through an alley and up onto the back porch of another residence. Fisher forced his way into the residence, breaking the doorjamb. An individual was home at the time Fisher broke into the residence through the back door. Officers apprehended Fisher inside the residence.

**{¶3}** During the search of Fisher's residence on S. Elizabeth Street, law enforcement officers discovered over four "kilos" of marijuana. The marijuana was packaged and prepared in kilos for distribution in suitcases and a black bag. A ledger was also located inside of the residence with details of names or nicknames of

individuals and the amount of money the individuals owed. Also found in the residence was a handgun, currency, drug paraphernalia, and a money counter. Fisher was under a weapons disability due to a prior conviction for Felonious Assault.

{¶4} Later on the same date, a second search warrant was executed at 128 W. Vine Street in Lima. This building was known to be occupied as a carry-out business by Fisher. Inside of the building officers discovered another 303 grams of marijuana and another firearm.

{¶5} On March 16, 2023, a six-count indictment was returned against Fisher alleging that he committed the following crimes: (Count 1) Trafficking in Marijuana in the vicinity of a school in violation of R.C. 2925.03(A)(2), a second degree felony; (Count 2) Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2), a third degree felony; (Count 3) Burglary in violation of R.C. 2911.12(A)(1), a second degree felony; (Count 4) Bribery in violation of R.C. 2921.02(C), a third degree felony; (Count 5) Trafficking in Marijuana in violation of R.C. 2925.03(A)(2), a fourth degree felony; and (Count 6) Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2), a third degree felony. As relevant to this appeal, Counts 1 and 5 contained 1 year firearm specifications pursuant to R.C. 2941.141(A). Fisher originally pled not guilty to the charges.

{¶6} Following, *inter alia*, a suppression hearing, Fisher entered into a written, negotiated plea agreement wherein he agreed to plead guilty to the following: Count 1, Trafficking in Marijuana, amended to remove the firearm

specification; Count 2 as indicted; Count 3, amended from a second degree felony to a third degree felony; Count 5 as indicted including the firearm specification; and Count 6 as indicted. As part of the agreement, in addition to the amendments made to Counts 1 and 3, the State agreed to dismiss Count 4 entirely. A change-of-plea hearing was held, wherein the trial court determined that Fisher was entering knowing, intelligent, and voluntary pleas. Sentencing was set for a later date.

{¶7} On October 28, 2024, the case proceeded to sentencing. The State requested the imposition of an aggregate prison sentence of 15 years. The defense argued in favor of concurrent sentences, while understanding that the prison term for the firearm specification in Count 5 was mandatory and a consecutive prison term would be imposed for the underlying felony in Count 5. Ultimately, the trial court sentenced Fisher to serve an indefinite prison term of 3 to 4.5 years on Count 1; 18 months on Count 2; 36 months on Count 3; 18 months on Count 5, plus a 1 year mandatory term for the firearm specification; and 18 months on Count 6. Those prison terms were ordered to be served consecutively for an aggregate, indefinite prison term of 11.5 - 13 years.

{¶8} A judgment entry memorializing Fisher's sentence was filed October 29, 2024. It is from this judgment that Fisher appeals, asserting the following assignments of error for our review.

## First Assignment of Error

**The sentencing judge's personal bias and reliance on misinformation and false assumptions resulted in a fixed anticipatory judgment regarding defendant-appellant's sentence, thereby depriving him of his right to due process guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.**

## Second Assignment of Error

**The evidence clearly and convincingly demonstrates that the sentencing judge's erroneous reliance on defendant-appellant's profit motive as a "more serious" factor under R.C. 2929.12(B) resulted in a sentence that is contrary to law.**

## Third Assignment of Error

**The sentencing judge's failure to merge the two trafficking in marijuana counts, and the two weapon under disability counts, deprived defendant-appellant of his rights under the Double Jeopardy clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.**

## Fourth Assignment of Error

**The evidence clearly and convincingly demonstrates that the record is devoid of a factual basis for the sentencing judge's consecutive sentencing findings under R.C. 2929.14(C)(4).**

## Fifth Assignment of Error

**The record clearly and convincingly demonstrates that the imposition of a mandatory prison term for defendant-appellant's fourth degree felony marijuana trafficking conviction resulted in a sentence that is contrary to law.**

{¶9} Fisher's assignments of error all relate to findings and statements made by the trial court at the sentencing hearing in this case. The State contends that many of Fisher's arguments are, *inter alia*, taken out-of-context. In order to address Fisher's assignments of error, a thorough review of the sentencing hearing is necessary. Therefore, we will summarize what occurred at the sentencing hearing, including quoting from the trial court's analysis at length so that the findings can be viewed in context. Then, we will proceed to address Fisher's assignments of error.

## Sentencing Hearing

{¶10} The sentencing hearing began with the trial court indicating that it had reviewed the sentencing memorandums filed by Fisher and the pre-sentence investigation that had been prepared. The trial court also indicated it had reviewed information that had been submitted from "Path Behavioral Healthcare" and several letters in support of Fisher from people in the community. The trial court then permitted the State to be heard regarding its sentencing recommendation.

{¶11} The State began by clarifying that restitution was not being sought by the victim of the Burglary. Then, the State highlighted the crimes Fisher committed and his criminal history. Ultimately the State recommended an aggregate 15-year prison sentence.

{¶12} Defense counsel then argued in mitigation. He argued that although Fisher had a prior conviction for Felonious Assault and, *inter alia*, Having Weapons

While Under Disability, under the *federal* sentencing guidelines these crimes would not be an enhancing factor because the Felonious Assault occurred in 1990 and the prior Having Weapons While Under Disability occurred in 2006.

{¶13} Defense counsel also argued that Fisher was extremely remorseful and a valued member of the community, as exhibited by the many people who had come to support him at sentencing and those individuals who had written letters to the trial court. Defense counsel argued that Fisher was only selling drugs because he needed money to pay for his mother's funeral.

{¶14} Defense counsel indicated that although Fisher acknowledged he was not supposed to possess firearms, he only kept them for protection. Defense counsel also argued that while Fisher acknowledged he was wrong for fleeing from police and breaking into the back door of a another individual's home, Fisher actually knew the individual, so the individual was not a complete stranger. In addition, Fisher's attorney argued that Fisher had been the victim of multiple crimes when he was younger, such as a home invasion, which left lasting impressions.

{¶15} After arguing regarding the Ohio sentencing factors, defense counsel then contended that the push for legalized marijuana nationwide should result in a more lenient sentence on the trafficking counts. Defense counsel indicated that under the federal sentencing guidelines, as calculated by the defense, the recommended sentencing range would be 37-46 months in prison. Defense counsel requested leniency from the trial court, while recognizing that Fisher would, by law,

have to serve a prison term on the firearm specification in Count 5, and a prison term on the underlying Trafficking in Marijuana charge in Count 5.

{¶16} Multiple community members then spoke on behalf of Fisher, including his therapist and a local pastor. All requested leniency on Fisher's behalf, indicating he was an important member of the community and that Fisher had a lot to teach the youth of the community.

{¶17} Finally, Fisher addressed the trial court and apologized for his actions. He stated he was taking responsibility for his mistakes and he was requesting leniency.

{¶18} After the parties finished addressing the trial court, the trial court proceeded to sentencing, stating as follows:

THE COURT: All right. Thank you. You may be seated.

I don't really have a lot of questions as I've heard everything, I've read the pre-sentence investigation, studied on this case now for several weeks now it seems like. . . . Um, I have a few comments, I took a bunch of notes here. I'm not going to go over everything.

Um, the Court's impressed with the many letters that I've gotten and from the people that have stood up in Court for Mr. Fisher. People that a lot I know, people that I have a lot of respect for, and people that are truly leaders and people that are truly genuine in wanting to make a change in this community. So, I appreciate that. I appreciate that input and I don't take it lightly that you came in here. I respect what some of the people that have spoken want to see happen in this community. I share those visions for the community.

As I read through the letters, and there was a variety of people, people that have gone on and done great things for our community, athletic stars, leaders in the community . . . public officials, ministers that have come in here today. And I read that – I read that description of Taurus Fisher, and I know there's a man that stands before me today that may be different than the man that was doing what he was doing back in 2022 but we're here to address what happened in 2022. And as I read the description and I hear the good things that Mr. Fisher has done and is doing in the community I have a conflict inside of me because here is a man that had over four kilos of marijuana to sell in this community, and I didn't do it because I don't have the statistics, but I didn't track of [sic] every kid that you helped, is there a corresponding or [sic] a parent of a kid or somebody else in the community that was – was on your customer list. The PSI said there was a ledger of the names and nicknames of customers and the amount of money that was owed. I – I didn't get that customer list but that's the conflict here. The conflict is on one hand a man who made mistakes as a young man, gets to the age of the late forty's early fifty's, whatever the reason – whatever the reason, to pay for a funeral or to support your kids or – or whatever you were going to do with the money to make the conscious decision that you're going to do that by selling marijuana. Now, yeah, I've heard it. I'm hearing it. 'It's just marijuana. Marijuana's legal now." But I can tell you from my own personal experience in the cases I've seen, the more – the serious cases, ninety-nine percent of the time, I've pulled out a PSI and it's a twelve year old or thirteen year old that starts with marijuana but they tell me marijuana's not a dangerous drug, 'oh, marijuana's not a gateway drug.' My experience is contrary to that. So, whoever's on your customer list, if they had children, if they were young adults on your customer list, whoever you were selling to or planning to sell to, I don't have letters from their parents. I don't have letters from their community support saying you ruined their life. You got them started on marijuana. And marijuana's legal. No doubt about it. But Mr. Fisher, I don't think you're a licensed marijuana dispensary.

It – it – it's troublesome. It's troublesome and – and I look at your prior record and the prior record is there and yeah, I agree, something to do in 1990 and you pay the price and your time and that doesn't

make the man you are now, what you did when you were a kid, but it's there. Along with everything else. I mean maybe more troublesome than what – what you did as a young adult are – are the – and it's been a while, I'll grant ya, it looks like probably ten years since you had misdemeanor possession charges but it paints a picture of a man who doesn't take his freedom seriously. Takes it for granted. You're not some young eighteen, nineteen, twenty, twenty-one year old misguided youth anymore. I see too many of those. Men and women. Black and white. They get caught up in it because their friends are doing it and then they come to Court. You're not that person. On paper, you're the person who's been with those young people and telling them not to do that stuff and then out the back door, you're selling marijuana to somebody.

Let me go through my notes here. I did – I thought it was very interesting all the information defense counsel gave me on the Federal Sentencing Guidelines and I learned more about the Federal Sentencing Guidelines in your memorandum than I've known before and it doesn't apply to me but it was interesting. Interesting in many respects in terms of how the Feds might be treating the marijuana violations. But, I notice in the information that was provided to me that this sentencing grid or whatever there's – there can be increases if there's possession of a weapon, which we have in this case. There could be an increase in sentencing if the defendant is in the leadership or supervisory role of the offense. This case, as far as I know, Mr. Fisher is the only person involved. But it looks like, from what I understood, the sentencings are generally increased depending upon – in that – in that range on the grid based upon the amounts. We are talking over four kilo's, almost five kilo's at the house and then several hundred grams at the store. This isn't a case of a – a young nineteen – eighteen, nineteen, twenty year old caught with a baggie of marijuana. . .

I'm asked to look at the human background of Mr. Fisher and I do, and that – that's important and that's going to be part of my sentence. Considering the man. . . . [T]he last couple years apparently Mr. Fisher's tried to do some good things. So, I do look at the human background but I don't forget the human background every user that

was on your list that you were going to sell to. They've got a story too. Maybe their story's not so good. Maybe they use and their marriage fell apart, they lost their job, they committed a crime, I don't know.

With respect to these guns, that's troublesome to the Court. . . . How many weapons under disability [can] you get before you learn you can't have a gun under any circumstances?

. . .

There's no evidence you used the gun to harm anybody. I'm not saying that. This is a crime of, basically, status. You cannot have a gun. Period. And I sympathize with the fact that you were a victim of a home invasion and that turned out terrible for you but when I think of that I think of a – your neighbor. Thank god nothing terrible happened but here he gets his home invaded and I'm not supposed to think about that. I'm only supposed to think about the terrible things that you went through. . . . In my mind, that burglary of your neighbor's home is among maybe the worst things that you did in this case. If I can buy into this well it's only marijuana and he didn't hurt anybody selling marijuana, which I don't believe, when all of us in this room go home at night and sit down to do homework with our kids or to watch T.V. or do whatever we do we should be able to have an expectation that somebody's not going to bust in there uninvited. To me that's one of the most serious things you did. . . .

Defense attorney's [sic] struck a chord with me when they pointed out that Ohio doesn't have any good statistics on how, uh, similarly situated defendant's [sic] might be treated . . . I don't like the federal system because it's a gird and it's a simple connect the dots and you get a sentence. I think it's more important that the Court have as much discretion as possible . . . I have to look at each individual and I'm going to treat Mr. Fisher because he's Mr. Fisher. I'm not going to treat Mr. Fisher because John Doe or Jane Doe got this sentence and got that sentence even if they're the similar offenses. I strive to be consistent. I strive to be fair. But I sentence the individual and I'm going to sentence Mr. Fisher as an individual based on what he did in

2022, what he pled guilty to. I'll take into consideration who he was then. I'll take into consideration who he is today. And, I'll also take into consideration what I hope, who I hope he is, when he is done servicing his time because that's one of my considerations. . . .

I suppose exercising my discretion includes mercy. That's not one of the statutory factors that I – the legislature tells me to look at but believe it or not I am a human being and I can feel. But, I go back to four kilograms o[f] marijuana packaged to be sold with a ledger of customers and what the customers owed. This was a business. This wasn't 'oh, I'm going to make a few bucks so I can get my bills paid'. This was a business. That's why it's a felony of the second degree, I think.

. . .

[D]oes the defense have any argument as to any of the counts merging?

[DEFENSE COUNSEL]: Your Honor, I don't believe that we do.

THE COURT: Well I'm going to find, just for the record, that I've reviewed that under the merger statute 2941.25 and cases starting with State v. Ruff and other cases that have followed Ruff in our district and all over the State of Ohio and based upon the facts of this case, none of these counts would merge for purposes of his conviction and sentencing.

. . .

There are statutory [sentencing] factors. I've hit on a few of them but I'll, uh, for the record make it clear. I find a serious factor in this case was that the offenses, especially the trafficking in marijuana charges, were committed as – for hire. That's not saying that somebody paid him to do it but in a fact that he was trying to raise money. So, he was trying to get paid for having all this marijuana. So, I find those, especially with the fact that you've got in the one count four, almost five, kilograms of marijuana. . . .

-12-

Less serious factors, now, I know the State's argument and I understand the State's argument that if – if – if you're going to sell illicit drugs there could be an expectation that people would get hurt. Whether it by [sic] – by the person that purchase the drugs but from the evidence I got here I don't have any evidence that the defendant caused or expected to cause physical harm to any persons and – but property's a different matter because the PSI, the facts I have, the door of the neighbor's house was busted out. So, there was property damage, at least with respect to count number three.

Another factor I have to look at are substantial grounds to mitigate the conduct and this one there was a lot of . . . information on. I had the report from the social worker and she came in and made a statement and a lot of other people in their letters and statements people have made have given me some mitigating . . . factors here but it's not enough to constitute a defense.

Recidivism factors and as the State argued, I agree, that weighs heavily in this case. Now I already got done saying, you know, he – he went to prison in, uh, was it 19…90

[Defense Counsel]: 90 Your Honor.

THE COURT: On the felonious assault with the firearm specs. And, uh, again I know that's a long time ago, so, if that was all that was there it's a recidivism factor. I don't give a whole lot of weight to that. I believe that young people can change. I wouldn't be doing this job if I didn't believe that. . . . And again, most recently it looks like the recent possession charge, last one was – it was ten years ago in 2014. So, I take all that in consideration. It wasn't like you were doing it yesterday but those are factors there. So, I have to, especially with respect to the weapons under disability charges and especially with respect to the drug charges because of your past, you've failed to respond favorably to sanctions previously imposed.

By your own statement in the, uh, PSI you've demonstrated a pattern of drug use by yourself. You've acknowledged that. That doesn't explain four kilograms though.

Alright, remorse. Almost everybody that comes in here, I've had a few people that aren't at all remorseful, almost everybody says their [sic] remorseful and I have to be the judge to find 'oh, okay the statute says is that genuine or not'. I'll – I'll give you credit. I  -- I find in your case you're genuinely remorseful.

The other factor in that section, committed under circumstances not likely to reoccur. One would certainly hope that person with the support and admiration of this many people, and there's probably this many again over in the hallway or out in the community, that one would not commit another crime. One would hope that. I don't know if you reached out for support when finances were getting out of hand and you needed to pay for a funeral and you needed help with the grandkids. You have all of this support but you chose to sell marijuana. So, I – I'm not going to make a finding whether [sic] committed under circumstances not likely to reoccur or not.

The ORA score, for what it's worth, the ORA score, for the people in the audience, is a recidivism [score]. . . . In this case it's a fourteen which indicates a low risk of reoffending. That gives the Court hope.

. . .

There's a presumption in favor of prison on count number one.

. . .

So, . . . with all that stuff that I've been thinking about for the last, well I guess, few – few weeks – several weeks, um I understand what the State is recommending, I understand what the defense is recommending, understanding of the calls of the community that I've heard and read. I'm going to fashion a sentence that nobody's going to like probably. My hope is because of what I've said that everybody, the State, the defense, and anybody else who is listening will

-14-

understand. And I've tried to express that by reasoning my thoughts, my considerations, but I have to arrive at something. And I do – I do take into consideration similar cases. Quite honestly we don't' have trafficking marijuana cases of this magnitude. We've had a few. Most of our trafficking cases are what one might say is the more serious charge. Our next sentencing is on a trafficking in fentanyl. Obviously, I think in anybody's explanation, probably a little bit more serious. All the people that are dying of fentanyl. People are dying of marijuana overdoses too. That doesn't get a lot of notoriety. A lot of times it's marijuana that someone laces with fentanyl. So, who's to say that a customer of yours, Mr. Fisher, wouldn't take that marijuana and lace it with some fentanyl and kill somebody someday? I'm just saying. I'm not – I'm not holding that against you. These are the kinds of things that I'm thinking about because I'm trying to make a difference in the community and the only way I get to make a difference in the community is by handing out sentences. Not only to address the individual that's before me and maybe get something in their brain or get something in their heart that they won't do it again. But also, part of this is the deterrent for others, that if they say 'if I'm going to sell marijuana bad things can come of that'. And you knew they would, you knew they'd come. You can't – nobody can come in and say 'I've got four kilos of marijuana and I didn't know that if I got caught bad things were going to happen.'

So, it will be the sentence of the Court on count one, the felony of the second degree trafficking in marijuana, this is an indefinite sentence, as I explained to you when you plead . . . on count one the indefinite sentence in this case will be a three year minimum. That translates under the law to be a potential maximum of four and a half years . . . [.] That, by the way, is far from the maximum sentence for a felony of the second degree.

On count two, that's the first weapons under disability, the Court will sentence you . . . to eighteen months in prison. For those keeping score that's half of the maximum sentence allowable.

On count number three, the burglary, as I stated before, the facts and circumstances of that burglary were troubling. The sentence on the burglary will be thirty-six months.

On Count five, that's a felony of the fourth degree is a less – least serious charge, but again the Third District says that's gotta be mandatory because you have a one year . . . mandatory gun spec. So, there's one year on the gun spec with respect to count five and on count give, the felony of the fourth degree, I'm going to sentence you to eighteen months.

On count six, the final weapons under disability, felony of the third degree, I'm going to sentence you to eighteen months.

Now, . . . again . . . the gun spec [is] mandatory. Nothing else is mandatory. After you serve the mandatory time and with the sentencing structure that I'm gonna – about to announce, there will be a point in time where you would be eligible for judicial release and I'm going to remember what everybody said. And that kind of information is helpful at a judicial release.

As far as these sentences on one, two, three, five, and six the Court is going to order that they be served consecutive to each other. The Court orders that consecutive sentences in this case are necessary to protect the public from future crime and to punish the defendant. I find that consecutive sentences are not disproportionate to the seriousness of the defendants conduct and the danger the defendant poses to the public.

I would find that the – at least two of the multiple offenses were committed as part of a course of conduct[.] . . .

I find the harm caused by all of these offenses was so great and unusual that no single prison term for any of the offenses adequately reflects the seriousness of the conduct.

I take into consideration too . . . the defendant's history of criminal conduct. Again, understanding there was . . . a time lapse in there since

2014 of nothing serious other than a couple (inaudible) running at large which don't mean anything to me but I take that into consideration. That, to the Court, demonstrates that consecutive sentences are necessary to protect the public from future crime. That is especially true, it's true on all of them, but especially true on the weapons under disabilities because this ain't your first go around on the weapons under disability.

So, the folks that don't have a calculator in the room, that translates to a sentence of eleven and a half years to a potential maximum of an additional year and half or thirteen. So, it will read eleven and a half to thirteen years.

(Oct. 28, 2024, Sent. Tr. at 35-50).

*First Assignment of Error*

**{¶19}** In his first assignment of error, Fisher argues that the trial court exhibited "bias" at the sentencing hearing, that the trial court relied on misinformation and false assumptions, and that the trial court deprived Fisher of his right to Due Process.

Relevant Authority

**{¶20}** A criminal proceeding before a biased judge is "fundamentally unfair and denies a defendant due process." *State v. LaMar*, 2002-Ohio-2128, ¶ 34. Judicial bias has been described as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v.*

*Weygandt*, 164 Ohio St. 463 (1956), at paragraph four of the syllabus. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" and "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases" ordinarily do not constitute a basis for bias, however, if those judicial opinions or remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible," judicial bias is demonstrated. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Analysis

{¶21} At the outset, Fisher attempts to paint the trial judge as "biased" for his "personal opposition to marijuana legalization." He focuses his argument on comments that the trial court made regarding marijuana as though his entire aggregate prison sentence was based on the marijuana convictions. Contrary to his argument, Fisher was sentenced to an indefinite 3-year prison term on the second degree felony Trafficking in Marijuana charge. This charge had a presumption in favor of prison and a sentencing range of 2 to 8 years. The sentence on this count was thus only slightly higher than the minimum prison term as established *by the legislature*, even though the trial court noted that it was a large quantity of marijuana for Allen County.

{¶22} In addition, for Fisher's other Trafficking in Marijuana conviction, he received an 18 month prison term. Combining these two prison terms, Fisher was sentenced to serve 4.5 years in prison for the marijuana charges out of a possible maximum of 9.5 years. Moreover, the 4.5 years that Fisher received accounted for less than half of his 11.5-year prison term. The remainder of his prison sentence was for his Burglary conviction, his two Weapons convictions, and the firearm specification.

{¶23} We find Fisher's attempts to paint the trial judge as biased for "focusing" on his own personal opposition to marijuana legalization is simply not supported by the record, particularly given that the majority of his aggregate prison term was unrelated to marijuana. Furthermore, it is important to emphasize that while marijuana laws in Ohio have changed, Fisher committed his crimes in February of 2022, over 18 months before marijuana was legalized in Ohio.

{¶24} Fisher supports his argument that the trial judge was biased by citing cases such as *State v. Weaver*, 2022-Ohio-4371, ¶ 62, where in the Supreme Court of Ohio determined in a 4-3 decision that a trial judge was biased because the record was "clear" that the trial judge did not hold an "open state of mind." *Weaver* is readily distinguishable from this case. Here, unlike in *Weaver*, the trial judge carefully considered all the sentencing factors and the arguments of the parties. In fact, the trial court indicated it was particularly concerned with the Burglary

conviction, which was reduced from a second degree felony to a third degree felony pursuant to the plea agreement.

{¶25} We find that after a full review of the trial court's analysis in this case at sentencing, Fisher has not demonstrated a Due Process violation due to judicial bias. Although some of the trial court's comments, when pulled out of their context, appear damning toward marijuana, the comments did not result in any harsher punishment for Fisher given that he was sentenced to nearly the minimum prison term for his second degree felony. There is no evidence to support that the trial judge applied a "fixed anticipatory judgment" in this case such that bias was established. *Weaver* at ¶ 59. For all of these reasons, Fisher's first assignment of error is overruled.

*Second Assignment of Error*

{¶26} In his second assignment of error, Fisher argues that the trial court erred by determining that Fisher's "profit motive" was a more serious factor under R.C. 2929.12(B).

Standard of Review

{¶27} The statute governing appeals based on felony sentencing guidelines, R.C. 2953.08, "defines the parameters and standards—including the standard of review—for felony-sentencing appeals." *State v. Marcum*, 2016-Ohio-1002, ¶ 21. "[A]n appellate court may vacate or modify a felony sentence on appeal

only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statues [identified in R.C. 2953.08(G)(2)(A)] or that the sentence is otherwise contrary to law" pursuant to R.C. 2953.08(G)(2)(B). *Id.* at ¶ 1; *see also* R.C. 2953.08(G). " 'Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶28} Revised Code 2929.11 sets forth the overriding purposes of felony sentencing that the sentencing court must be guided by when sentencing an offender. Revised Code 2929.12(B) through (F) list factors the sentencing court must consider, which include factors relating to the seriousness of the conduct, the likelihood of the offender's recidivism, and the offender's services in the armed forces. *E.g.*, R.C. 2929.12(D)(2) ("the offender has a history of criminal convictions"); R.C. 2929.12(D)(5) ("[t]he offender shows no genuine remorse for the offense"). The sentencing court also "may consider any other factors that are relevant to achieving those purposes and principles of sentencing." R.C. 2929.12(A). Neither statute "requires a trial court to make any specific factual

findings on the record." *State v. Jones*, 2020-Ohio-6729, ¶ 20; *see also* R.C. 2929.11 and 2929.12.

{¶29} In considering R.C. 2929.11 and 2929.12 as they relate to felony-sentencing appeals, the Supreme Court of Ohio has further limited appellate review by holding that "R.C. 2953.08(G)(2)(a) clearly does not provide a basis for an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and 2929.12," and subdivision (b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Jones* at ¶ 31, 34, 39 ("an appellate court's conclusion that the record does not support a sentence under R.C. 2929.11 or 2929.12 is not the equivalent of a conclusion that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)"). Thus, R.C. 2953.08(G)(2) does not allow "an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42; *see also State v. Bryant*, 2022-Ohio-1878, ¶ 22. However, "when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law," and claims that raise those "types of issues are therefore reviewable." *Bryant* at ¶ 22 (finding the trial court increased the sentence based on an impermissible consideration).

Analysis

**{¶30}** During the trial court's analysis at the sentencing hearing, the trial court indicated that

> I find a serious factor in this case was that the offenses, especially the trafficking in marijuana charges, were committed as – for hire. That's not saying that somebody paid him to do it but in a fact that he was trying to raise money. So, he was trying to get paid for having all this marijuana. So, I find those, especially with the fact that you've got in the one count four, almost five, kilograms of marijuana.

Fisher argues that the trial court's statement placed "undue emphasis" on Fisher's "profit motive" as a sentencing factor.

**{¶31}** As stated previously, R.C. 2953.08 and *Jones* do not provide an avenue for reversal for Fisher's claims. Nevertheless, even assuming they could provide an avenue to reverse Fisher's sentence, the record does not support a reversal.

**{¶32}** One of the factors to consider in felony sentencing under R.C. 2929.12(B) is "The offender committed the offense for hire or as part of an organized criminal activity." Given the amount of drugs Fisher had packaged for sale, the fact that he had a ledger of his illicit dealings, the fact that the drugs were in multiple locations with multiple firearms, *and* given that law enforcement conducted surveillance on Fisher's residence observing numerous potential drug deals, we find no error with the trial court's finding as it is supported by the record.

{¶33} Moreover, Fisher attempts to compare his case to the Supreme Court of Ohio's decision in *State v. Bryant*, 2022-Ohio-1878, wherein a 4-3 decision the Court determined that a trial court could not enhance a sentence that had already been imposed based on the defendant's behavior after the pronouncement was made. *Bryant* is facially dissimilar from the case *sub judice* and does not compel a different result. For all of these reasons, Fisher's second assignment of error is overruled.

### *Third Assignment of Error*

{¶34} In Fisher's third assignment of error, he argues that the trial court erred by failing to merge the marijuana trafficking convictions, and the two weapons charges for purposes of sentencing.

### Standard of Review

{¶35} Whether offenses are allied offenses of similar import is a question of law that this court reviews de novo. *State v. Jones*, 2024-Ohio-2959, ¶ 45 (3d Dist.). However, because Fisher's trial counsel specifically did not object to any lack of merger in this case, we review the matter only for plain error. *State v. Jarrett*, 2020-Ohio-393, ¶ 12 (2d Dist.).

Relevant Authority

**{¶36}** "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords protections against the imposition of multiple criminal punishments for the same offense." *State v. Rogers*, 2015-Ohio-2459, ¶ 16, citing *Hudson v. United States*, 522 U.S. 93, 99 (1997). The prohibition against multiple punishments is codified in R.C. 2941.25, which provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The Supreme Court of Ohio elaborated that

> when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Ruff*, 2015-Ohio-995, ¶ 31.

**{¶37}** "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving

separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus. "Offenses are committed separately within the meaning of R.C. 2941.25(B) if one offense is completed before the other offense occurs." *State v. Fisher*, 2023-Ohio-2088, ¶ 21 (6th Dist.), citing *State v. Turner*, 2011-Ohio-6714, ¶ 24 (2d Dist.).

> "Animus" is defined for purposes of R.C. 2941.25(B) as " 'purpose' or 'more properly, immediate motive.'" "If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses." Animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. (Citations omitted.)

*State v. Fisher*, 2014-Ohio-4257, ¶ 17 (4th Dist.).

{¶38} "The defendant bears the burden of establishing his entitlement to the protection, provided by R.C. 2941.25, against multiple punishments for a single criminal act." *State v. Mughni*, 33 Ohio St.3d 65, 67 (1987). "[W]hen deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus." *State v. Washington*, 2013-Ohio-4982, ¶ 24.

Analysis

{¶39} Fisher argues that his two convictions for Trafficking in Marijuana should merge with each other for purposes of sentencing and that his two

convictions for Having Weapons While Under Disability should merge for purposes of sentencing. However, it is important to emphasize that the trafficking convictions were each for marijuana located at two different addresses. Marijuana was found at Fisher's residence, then separately at Fisher's place of business. In addition, one firearm was located at the residence, and another firearm was located at the business.

{¶40} Generally, recovery of the same drug in differing quantities at different locations permits conviction and sentence for each offense. *State v. Jones*, 2024-Ohio-2959, ¶ 62 (3d Dist.). In addition, where the drug is packaged separately it demonstrates the animus of preparation for sale to at least two different drug users. *Id*. Based on the well-settled law, we do not find that the Trafficking in Marijuana convictions should merge for purposes of sentencing.

{¶41} Regarding the separate weapons charges, there were two separate firearms in two separate locations that Fisher pled guilty to possessing. This constitutes two separate charges and we do not find that it is plain error for the trial court to determine not to merge the convictions for purposes of sentencing. For all of these reasons, Fisher's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶42} In his fourth assignment of error, Fisher argues that the trial court's consecutive sentencing findings pursuant to R.C. 2929.14(C)(4) were not supported by the record.

Relevant Authority

**{¶43}** In order to impose consecutive sentences, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 2014-Ohio-3177, syllabus.

Revised Code 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶44}** When reviewing consecutive sentences on appeal, "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's

-28-

consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5.

Analysis

{¶45} Fisher does not dispute that the trial court made the appropriate findings on the record at the sentencing hearing to impose consecutive sentences. In addition, he does not dispute that the trial court's judgement entry reflected the appropriate findings to impose consecutive sentences pursuant to R.C. 2929.14(C)(4). Rather, he contends that the trial court erred by finding that the harm caused by Fisher's separate trafficking violations was "so great or unusual" that no single prison term could adequately reflect the seriousness of his conduct.

{¶46} Fisher's argument focuses on the trial court's findings regarding R.C. 2929.14(C)(4)(b); however, the trial court made a finding under *both* R.C. 2929.14(C)(4)(b) *and* R.C. 2929.14(C)(4)(c) when imposing consecutive sentences. Thus to invalidate the trial court's imposition of consecutive sentences, Fisher would have to establish by clear and convincing evidence that the trial court erred with regard to both findings. He is unable to meet his burden.

{¶47} The record clearly supports the trial court's finding under R.C. 2929.14(C)(4)(c) related to Fisher's criminal history. Although the *federal* sentencing guidelines might not have considered some of Fisher's prior convictions

for purposes of enhancement, the Ohio legislature has not made the same distinction. Fisher has a prior Felonious Assault conviction and a prior Having Weapons While Under Disability conviction. He also had multiple prior drug convictions. The trial court's findings under R.C. 2929.14(C)(4)(c) are thus supported by the record.

{¶48} With regard to the findings under (C)(4)(b), again the evidence supports that the crimes were committed separately, thus multiple courses of conduct occurred. This reflects that this was not some instance of "count manipulation" as suggested by Fisher in his brief.

{¶49} After reviewing all of Fisher's argument in his brief, including those not specifically discussed herein, we find that Fisher has not established that the trial court's order regarding consecutive sentences was clearly and convincingly contrary to law. Therefore, his fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶50} In his fifth assignment of error, Fisher argues that the trial court erred by imposing a prison term on the underlying charge in Count 5 when it imposed a separate prison term for the firearm specification. Fisher contends that the trial court erroneously followed this Court's precedent in *State v. Peters*, 2023-Ohio-4362, wherein this Court determined that a prison term had to be imposed for the

underlying felony in addition to the firearm specification pursuant to R.C. 2929.13(F)(8).

**{¶51}** The issue raised by Fisher has been recently settled by the Supreme Court of Ohio in *State v. Logan*, 2025-Ohio-1772, ¶ 25, wherein the Court held, "R.C. 2929.13(F)(8) requires a trial court to impose a prison sentence on an offender convicted of a felony offense that has a corresponding firearm specification." The holding in *Logan* entirely defeats Fisher's argument; therefore, his fifth assignment of error is overruled.

*Conclusion*

**{¶52}** Having found no error prejudicial to Fisher in the particulars assigned and argued, the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.   The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

_____
Juergen A. Waldick, Judge


_____
William R. Zimmerman, Judge


_____
Mark C. Miller, Judge

DATED:
/jlm